Joseph F. YORK, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 17, 2012.
Decided Sept. 13, 2012.
Publication Ordered Nov. 28, 2012.

Richard J. Orloski, Allentown, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Joseph F. York (Claimant) petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) January 19, 2012 order affirming the Referee's decision denying benefits. Claimant presents ten issues for this Court's review: (1) whether the Referee's refusal to issue a subpoena to produce records was reversible error; (2) whether the Referee erred by failing to recuse herself; (3) whether Northampton Borough's (Employer) appeal of the initial Notice of Determination granting benefits was *ultra vires*, thus rendering the appeal invalid; (4) whether the Referee's decision to exclude a court reporter and a paralegal from the hearing room was reversible error; (5) whether the Referee's exclusion of certain testimony was reversible error; (6) whether the UCBR erred when it concluded that the alleged incident of willful misconduct was not too temporally remote from Claimant's discharge; (7) whether the finding that Claimant denied his overhead lights were on during the incident in question is contrary to the evidence; (8) whether the Referee's refusal to permit Claimant to testify about his medication and its effects on his memory was prejudicial error; (9) whether the Referee's refusal to permit testimony about possible retaliatory motivation for Claimant's employment termination was prejudicial error; and (10) whether the UCBR improperly placed the burden of proof on Claimant. We affirm.

Claimant was employed as a police officer by Employer from 1991 until May 5, 2011. On March 12, 2011 at approximately 8:56 p.m., while on duty, Claimant left the police station and drove his patrol car to a local video store that closed at 9:00 p.m. Claimant had not been called to the video store and there was no work-related reason for Claimant to go to the video store. During the trip, Claimant activated the car's overhead emergency lights which automatically triggered the video camera mounted in the patrol car's dashboard. Claimant drove his patrol car at speeds in excess of the posted limits, caused a vehicle to pull over to let Claimant pass, drove past three stop signs without stopping, and crossed into the opposing traffic lane. Prior to arriving at the video store, Claimant switched off his emergency lights, but did not turn off the video camera. Claimant arrived at the video store at about 8:58 p.m., parked in the fire lane in front of the video store, and entered the store to buy or rent a video.

Employer's Police Department (Department) rules and regulations call for disciplinary action for neglect or violation of official duty and/or conduct unbecoming an officer. Employer initiated an investigation into Claimant's conduct on the evening of March 12, 2011. On March 24, 2011, Claimant was notified of Employer's intent to take disciplinary action, and advised Claimant that a pre-disciplinary conference would be held on March 28, 2011.

On March 28, 2011, Claimant met with Chief Ronald Morey (Chief Morey) and Sergeant Bryan Kadingo (Sergeant Kadingo). A union representative was also present at the meeting. During the conference, Claimant maintained that he could not remember specific relevant details of the evening in question, but asserted that he would not have used his emergency overhead lights for the purpose of going to the video store. Claimant stated that on the night in question, he did not think he had been dispatched to any calls that required him to use his emergency overhead

lights, but stated, "I guess I had my lights on at some point or I wouldn't be here, but I don't remember." Reproduced Record (R.R.) at 200a. Claimant's log did not reflect that Claimant had responded to any calls during the time in question and, in fact, based upon the GPS unit in Claimant's patrol car, inaccurately detailed Claimant's location during the time immediately before, during and after his trip to the video store. Claimant admitted that, contrary to Department protocol, he did not always record traffic stops on his log. Claimant was then asked if he remembered having his lights on while traveling on a particular roadway that evening. Claimant responded, "No, I'm not saying I did or didn't. I don't remember if I did. I don't know." R.R. at 201a.

By letter dated April 13, 2011, Chief Morey advised Claimant that he was recommending to Employer's Borough Council (Borough Council) that it terminate Claimant's employment. On May 5, 2011, the Borough Council officially terminated Claimant's employment on the basis that his conduct constituted Neglect or Violation of Duty and Conduct Unbecoming of an Officer.

On May 5, 2011, Claimant filed for Unemployment Compensation (UC) benefits under the Unemployment Compensation Law (Law).[1] On June 16, 2011, the Scranton UC Service Center issued a determination that Claimant was eligible for benefits under Section 402(e) of the Law.[2] On June 24, 2011, Gene Zarayko, Employer's Borough Manager (Borough Manager), filed an appeal from the determination. By letters dated July 1, 2011 and July 12, 2011, Claimant's counsel sought to obtain subpoenas to require the attendance of Chief Morey at the hearing before the Referee, and to compel production of both the video recording of the March 12, 2011 incident, and the GPS printout pertaining to Claimant's patrol car on that evening. The letters also expressed Claimant's intention to challenge the Borough Manager's authority to file the appeal. On July 21, 2011, the Referee's office notified Claimant's counsel that the subpoena requests had been approved. By August 4, 2011 notice, a hearing was scheduled for August 18, 2011. By August 10, 2011 letter, Claimant's counsel demanded an additional subpoena to compel the production of records and videotapes reflecting the number of times Claimant used his overhead emergency lights for an approximate two-week period. By August 11, 2011 letter, Employer's counsel opposed the additional subpoena in part because there would be insufficient time prior to the hearing to obtain the specified material. On that same date, the Referee notified Claimant's Counsel that his application had been denied. In response, Claimant's counsel, by August 11, 2011 letter, implored the Referee to reconsider her decision and, in response to Employer's concern, suggested a continuance "to give [Employer's counsel] whatever time he needs to secure the documents." Original Record, Item No. 13. By August 12, 2011 notice, the Referee denied Claimant's request.

The Referee's hearing was held on August 18, 2011. At the start of the hearing, Claimant's counsel again sought an additional subpoena and the matter's continuance. The Referee denied both applications. Claimant's counsel then renewed an earlier inquiry that he be permitted to have his own court reporter transcribe the testimony. The Referee denied that re-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

2. 43 P.S. § 802(e).

quest as well. Next, Claimant's counsel argued that the Borough Council had not sanctioned the filing of the appeal, and thus, the appeal was *ultra vires*. Claimant's counsel argued that the hearing should be continued so Employer's counsel could present a witness establishing that the filing of the appeal had been authorized. The Referee refused the continuance stating, "I am going to just assume that [the appeal was authorized]." R.R. at 25a. When Claimant's counsel noted that he believed the action to be error, the following exchange took place between the Referee and Claimant's counsel:

[Referee (R) ]: And again[,] I don't appreciate you telling my clerk or asking my clerk if I'm a real Referee.

[Claimant's Counsel (CL) ]: I didn't say that, Judge.

R: Okay. That's what my secretary told me you said this morning.

[Employer's Counsel (EL) ]: I'll stipulate that you're a real Referee, your honor.

R: Thank you.

CL: I don't know what your clerk said to you. I have to [sic] reason to say that, Judge.

R: Okay. Well then I'll talk to her about it later.

R.R. at 25a–26a. Based upon that exchange, Claimant's counsel expressed concern about the Referee's impartiality, and ultimately asked that the Referee recuse herself. The recusal was denied.

Chief Morey and Sergeant Kadingo testified on behalf of Employer. Sergeant Kadingo attested to his investigation of Claimant's conduct on the night of March 12, 2011 and described the contents of the video recording as it was played for the Referee. Chief Morey provided testimony regarding Employer's policies and procedures, Claimant's pre-disciplinary conference, and Claimant's answers to his questions. On cross-examination, Claimant's counsel began to question Chief Morey regarding his knowledge of Claimant's medical condition, which purportedly affects Claimant's memory. The Referee prohibited Claimant's counsel from pursuing that line of questioning, and prevented Claimant from testifying about his medical condition.

At the conclusion of Employer's case, Claimant attempted to present the testimony of Richard Suppan (Suppan), a retired police officer from the Allentown Police Department and paralegal for Claimant's counsel. Claimant sought to have Suppan testify that Claimant's conduct, as depicted on the videotape, was consistent with acceptable police conduct. The Referee disallowed Suppan's testimony.

Finally, Claimant indicated that he had no specific recollection of the night at issue, but confirmed that it is not unusual for him and other officers to use their overhead lights. Claimant began to testify about his health condition, and about circumstances regarding his hiring by Employer, but the Referee disallowed the evidence.

On August 29, 2011, the Referee issued her decision/order concluding that Claimant's conduct in activating his emergency overhead lights on his way to the video store on March 12, 2011 constituted willful misconduct and that Claimant had not established good cause for his actions. Accordingly, the Referee denied UC benefits. Claimant appealed to the UCBR. On January 19, 2012, the UCBR adopted the Referee's findings and conclusions and affirmed her decision. Claimant appealed to this Court.[3]

Claimant first argues that the Referee's refusal to issue a subpoena to Employer for records regarding the frequency of Claimant's use of emergency lights was error.

This Court has stated:

> An unemployment compensation Referee is obliged to issue requested subpoenas where the issuance of the subpoena would lead to relevant and probative testimony. The Referee, however, has discretion to refuse issuance when the Referee finds that the subpoena is being requested for purposes of harassment or to commence a fishing expedition.

*AVCO Corp. v. Unemployment Comp. Bd. of Review,* 739 A.2d 1109, 1116 (Pa. Cmwlth.1999) (citation omitted). In the instant matter, Claimant purportedly sought the records for the purpose of establishing that Claimant's frequent use of his emergency lights justified Claimant's hazy memory as to whether he had used the emergency lights during the specific time period in question. To the extent that one of the justifications for discharging Claimant was that he had been dishonest when he told Chief Morey that he could not recall whether his lights had been on during the specified time, such evidence, if it existed, could tend to lend credence to Claimant's assertions. However, given that the Referee based her conclusion on the fact that Claimant had committed willful misconduct by using overhead emergency lights without good cause and disobeying traffic laws on his trip to the video store in violation of Employer's policies, and not upon Claimant's purported dishonesty, we conclude the

Referee did not err in refusing to issue the subpoena.

Claimant next alleges that the Referee's failure to recuse herself constituted reversible error. We disagree. Claimant asserts that the Referee's conduct throughout the hearing demonstrates she held a bias against Claimant, however, relies on two specific incidents to support his assertion that she should have recused herself from hearing the matter. First, Claimant maintains that the Referee's unprovoked accusation at the start of the hearing regarding Claimant's counsel asking the Referee's law clerk whether the Referee was a "real judge," demonstrates the Referee's annoyance with Claimant's counsel and bias against Claimant. Second, Claimant contends that the following statement made by the Referee demonstrates the Referee had prejudged the matter:

> **R:** Okay. But again we're sticking to the reasons for the termination.
>
> **EL:** This, this is additional. Basically the willful, willful misconduct is the violation of the rules and regulations. In addition to what I've presented we have two more now. I just got one, another one. So I think that's proper, Your Honor.
>
> **R:** Well actually I'm going to just stick to the reasons that the employer terminated the Claimant. I think we have enough there to cover those rules.
>
> **CL:** Your Honor, with all due respect, that didn't sound like a fair comment.
>
> **R:** I know. As soon as I said it I realized it, I just meant that there were, that we've gone over so many rules already.

---

3. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether

errors of law were committed. *Johnson v. Unemployment Comp. Bd. of Review,* 869 A.2d 1095 (Pa.Cmwlth.2005).

. . . .

**R:** I'm sorry it sounded like that. I just meant we've covered so many rules.

R.R. at 116a–117a.

■ This Court has stated, "[i]n general, recusal is required whenever there is substantial doubt as to a jurist's ability to preside over a matter impartially. . . . Before it can be said that a judge should have recused himself, **the record must clearly show prejudice, bias, capricious disbelief or prejudgment.**" *Dunn v. Bd. of Prop. Assessment*, 877 A.2d 504, 517 (Pa.Cmwlth. 2005), *aff'd*, 594 Pa. 410, 936 A.2d 487 (2007) (emphasis added). Contrary to Claimant's contentions, we do not conclude that in the aforementioned exchanges between Claimant's counsel and the Referee, or otherwise, the record demonstrates "prejudice, bias, capricious disbelief or prejudgment." *Id.* Accordingly, we rule that the Referee properly declined to recuse herself.

■ Claimant next asserts that the Referee erred when she concluded the appeal was properly filed by the Borough Manager. Specifically, Claimant insists the appeal was *ultra vires* because it was not ratified by the Borough Council until August 29, 2011. We disagree. The Borough Council granted administrative and management powers to the Borough Manager by way of Section 6 of Ordinance No. 535, adopted and approved on February 12, 1954 as amended by Section 5 of Ordinance No. 850, adopted and approved on July 18, 1974.[4] That section states:

The Manager shall be the chief administrative officer of the Borough, and he shall be responsible to the Council as a whole for the proper and efficient administration of the affairs of the Borough. His powers and duties shall relate to the general management of all Borough business not expressly by statute or ordinance imposed or conferred upon other Borough officers.

R.R. at 195a. We conclude that even in the absence of the Borough Council's adopted motion to retroactively authorize the appeal, the filing of an appeal from a UC determination was within the Borough Manager's authority to administer the affairs of the Borough and thus, the appeal was not invalid on that basis. Accordingly, the Referee did not err in concluding that the appeal was properly filed.

Claimant next argues that the Referee's decision to exclude Claimant's stenographer and Claimant's counsel's paralegal from the hearing was fundamental error. We disagree. Section 101.21(c) of the UCBR's Regulations, entitled, "Conduct of hearings," provides:

Hearings under this part shall be open to the public, subject to the availability of suitable and reasonable facilities. However, the tribunal conducting a hearing may close the hearing as to other than interested parties to the extent necessary to protect the interests and rights of the claimant or employer to a fair hearing.

34 Pa.Code § 101.21(c).

Claimant sought to have a private stenographer transcribe the hearing for use

---

**4.** Section 1142 of The Borough Code, requires that the powers and duties of the borough manager shall be regulated by ordinance and further provides in pertinent part: The council, by ordinance, may delegate, subject to recall, any of the nonlegislative and nonjudicial powers and duties of the council, the planning commission and the shade tree commission, to the borough manager. With approval of borough council, the mayor may delegate to the borough manager any of his nonlegislative and nonjudicial powers and duties[.]

Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46142.

in another legal action arising from Claimant's employment termination. At the start of the hearing, the Referee prohibited the stenographer from attending the hearing. During the hearing, the Referee directed Claimant's counsel's paralegal to leave because he was taking notes. Although we agree with Claimant's counsel that hearings should ordinarily be open to the public, we conclude that the Referee's exclusion of these individuals did not impact upon the outcome of the hearing and, thus, does not form a basis for reversing the UCBR's decision. Thus, we rule that the exclusion of these individuals was not fundamental error.

■ Claimant next challenges that Suppan was improperly excluded from testifying as to the possible reasons Claimant used his emergency lights during the subject incident. We discern no error. Suppan was not present when the incident occurred, and did not work for Employer. Further, Suppan worked for Claimant's attorney as a paralegal. Finally, Claimant's attorney could not confirm that Suppan would provide any testimony that Claimant could not. Therefore, the Referee did not err when she excluded Suppan's testimony.

■ Next, Claimant reasons that, based upon *Tundel v. Unemployment Compensation Board of Review*, 44 Pa.Cmwlth. 312, 404 A.2d 434 (1979), Claimant's purported willful misconduct cannot form the basis for the denial of benefits because it was too temporally remote from his dismissal. Claimant alleges that he was prejudiced by the delay between the March 12, 2011 incident, and the March 28, 2011 pre-disciplinary conference, since it purportedly affected Claimant's ability to recall the details of the night in question. We disagree.

The *Tundel* Court stated, "[a]n incident of willful misconduct cannot be temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Id.* at 316, 404 A.2d at 436. More recently, in *Raimondi v. Unemployment Compensation Board of Review*, 863 A.2d 1242 (Pa.Cmwlth.2004), this Court further stated:

> [W]here there is an *unexplained* substantial delay between the claimant's misconduct and the employer's act to terminate the claimant, the remoteness doctrine will preclude an employer from seeking a denial of benefits based on allegations of willful misconduct. However, where the record establishes an explanation for the delay, such as the lengthy nature of the employer's administrative review process, and there is no action on the part of the employer indicating that it condoned the claimant's conduct, the remoteness doctrine does not apply to preclude a denial of benefits.

*Id.*, 863 A.2d at 1247.

Here, the instance occurred on the evening of March 12, 2011. Thereafter, Employer learned of Claimant's misconduct, obtained and reviewed the tapes and conducted an investigation. Less than two weeks later, on March 24, 2011, Claimant was notified of Employer's intent to take disciplinary action, and that a pre-disciplinary conference had been scheduled for March 28, 2011. Claimant was notified by April 13, 2011 letter that Chief Morey was recommending to Borough Council that Claimant's employment be terminated. At an April 21, 2011 meeting, the charges against Claimant were discussed in the presence of the Borough Council, Borough Manager, Chief Morey, Claimant, Claimant's counsel, and the Borough solicitor. On May 5, 2011, Claimant's employment was officially terminated. Based upon this timeline, we cannot conclude that the delay between the March 12, 2011 occurrence and the May 5, 2011 termination of Claim-

ant's employment was substantial, unexplained or unreasonable. Accordingly, we reject Claimant's assertion that the denial of benefits was unwarranted based upon the delay between Claimant's misconduct and the termination of his employment.

Claimant next contends that the Referee's finding of fact No. 10, wherein she found that Claimant denied his overhead lights were on during the episode, constitutes prejudicial error. We disagree. Specifically, Claimant avers that the Referee's characterization of the conversation between Chief Morey and Claimant directly contradicts the transcript of that conversation. As previously discussed, the Referee concluded that Claimant's improper use of his emergency lights and his disregard of traffic laws on his trip to the video store constituted willful misconduct. Thus, the Referee's characterization of that conversation is irrelevant. Accordingly, we conclude Claimant's argument is meritless.

Claimant further maintains that the exclusion of testimony regarding Claimant's medical condition and its effect on Claimant's memory was prejudicial error. We disagree. "Physical illness can constitute good cause for a claimant's non-compliance with an employer's directive. To establish such a claim, a claimant is not required to produce expert testimony, but rather need only introduce 'competent evidence'[.]" *Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 1 A.3d 965, 968 (Pa.Cmwlth.2010) (citation omitted). To the extent that this evidence was being offered to defend against Claimant's employment termination on the grounds of his lack of veracity, it may have been permitted to demonstrate that Claimant had not been untruthful or evasive in his discussions with Chief Morey. However, the Referee's finding of willful misconduct was not based upon the charges of Claimant's dishonesty, but rather on Claimant's misuse of his emergency lights. Therefore, the exclusion of his medical evidence was not prejudicial error.

Next, Claimant asserts that the Referee's exclusion of evidence regarding a purported retaliatory motivation for the termination of Claimant's employment was prejudicial error. We discern no error. Claimant attempted to show a retaliatory motive for his discharge based upon an event that occurred twenty years ago. The Referee refused to allow this evidence because such testimony was too temporally remote to be relevant. *See, e.g., Garner v. Pa. Human Relations Comm'n*, 16 A.3d 1189 (Pa.Cmwlth.2011). Accordingly, the Referee's exclusion was proper.

Finally, Claimant alleges that the Referee improperly placed the initial burden upon Claimant by requiring Claimant to establish good cause for his conduct. We disagree.

Section 402(e) of the Law provides that an employee is ineligible for unemployment compensation benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n. 4 (Pa.Cmwlth.2000) (citation omitted).

"When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation. The burden then shifts to the employee to prove that he or she had good cause for violating the rule." *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa.Cmwlth.2012) (citation omitted).

In the instant matter, the Referee's decision directly contradicts Claimant's argument. The decision states:

> Since the claimant was discharged, the employer has the burden of establishing that the discharge was for willful misconduct in connection with the claimant's work in accordance with Section 402(e) of the law.

> In this case, the employer found that the claimant violated multiple rules and regulations of the Northampton Borough Police Department and Pennsylvania statutes governing operation of a vehicle when the claimant activated his emergency overhead lights on his patrol car while traveling from the police station to the video store. The claimant admits that the emergency lights were on but he has no recollection of why the emergency lights were on. **The employer presented extensive testimony regarding its rules and regulations governing the use of the emergency overhead lights when responding to an emergency situation. The claimant was aware of the rules and regulations. Now the burden shifts to the claimant to show good cause for his conduct.**

R.R. at 18a–19a (emphasis added).[5] The UCBR, in its January 19, 2012 order, adopted the Referee's findings and conclusions.

This Court has stated:

In unemployment compensation proceedings, the [UCBR] is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. Findings made by the [UCBR] are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings.

*Kelly v. Unemployment Comp. Bd. of Review*, 776 A.2d 331, 336 (Pa.Cmwlth.2001). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Review*, 927 A.2d 675, 676 n. 1 (Pa. Cmwlth.2007) (quotation marks omitted).

Based upon the evidence presented, the Referee and the UCBR concluded that Employer provided substantial evidence of willful misconduct, and thus had met its burden. Employer, through Chief Morey's testimony, established the existence of its rules, regulations and policies. Further, Employer demonstrated through video evidence that Claimant used his lights and disobeyed numerous traffic laws during the drive to the video store. The patrol car video did not show that Claimant was acting in response to an emergency situation and Claimant's logs did not reflect that Claimant had answered any calls during the time in question. Accordingly, the Referee properly determined that Employer established Claimant had engaged in willful misconduct. The burden then shifted to Claimant. Accordingly, we discern no error in the UCBR's application of the law.

---

5. The first page of the Referee's decision and order is numbered 18a in the reproduced record. The last page is numbered 19a. The page containing the referenced quote was not numbered in the reproduced record, but nevertheless belongs between 18a and 19a.

For all of the above reasons, the UCBR's order is affirmed.

*ORDER*

AND NOW, this 13th day of September, 2012, the Unemployment Compensation Board of Review's January 19, 2012 order is affirmed.