**Sandra L. HENDERSON, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 19, 2013.

Decided Oct. 8, 2013.

Sandra L. Henderson, pro se.

Janet M. Tarczy, Assistant Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Petitioner Sandra L. Henderson (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed the Altoona UC Service Center's (Service Center) determination, which denied Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we affirm.

## I. BACKGROUND

Claimant filed for unemployment compensation benefits subsequent to her discharge from employment as an Unemployment Compensation Referee with the Pennsylvania Department of Labor and Industry (Employer or Department). The Service Center determined that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Law. (Certified Record (C.R.), Item No. 4.) Claimant appealed the determination, and, because Claimant was a former referee, the Board assumed jurisdiction over the appeal pursuant to Section 504 of the Law.[2] The Board assigned a hearing officer to hold an evidentiary hearing and to certify the record to the Board for review.

Before the hearing officer, Employer presented the testimony of Janice Cohen, Employer's Appeals Program Manager; Rachel Eaton, Employer's Human Resources Analyst; and Amy Huffman, a former claimant who previously appeared before Claimant. Claimant presented the testimony of Rose Betti, a former referee and Claimant's union representative. Claimant also testified on her own behalf.

Ms. Cohen testified to the existence of Employer's Code of Conduct, specifically Canon 3, which provides that referees may not initiate or consider *ex parte* communi-

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 824.

cations. (C.R., Item No. 19 at 49.) Ms. Cohen, who attended referee training at the same time as Claimant, testified that she received Employer's Code of Conduct at the initial three week training session. (*Id.* at 49–50.) Ms. Cohen also testified that referees are instructed during training to go on the record before answering parties' questions. (*Id.* at 50.) Ms. Cohen testified that she initiated the investigation against Claimant after Claimant requested overtime that Ms. Cohen did not believe was justified. (*Id.* at 51.)

Ms. Cohen testified that when Claimant requested overtime a second time, Ms. Cohen checked Claimant's schedule again to verify that overtime was warranted and noticed several appeal withdrawals, one of which was by Malak Labeeb. (*Id.* at 52–53.) Ms. Cohen testified that, after further investigation, she discovered an accidently recorded off-the-record conversation between Claimant and Mr. Labeeb. (*Id.* at 54.) Ms. Cohen testified that Claimant did not follow proper procedure when speaking to Mr. Labeeb, because Claimant never officially went on the record. (*Id.* at 60.)

Ms. Cohen testified that she subsequently contacted several other claimants who withdrew their appeals after being scheduled for hearings before Claimant. (*Id.* at 62.) Ms. Cohen testified that she spoke with Amy Huffman, who informed Ms. Cohen that Claimant encouraged her to withdraw her appeal, and Claimant never went on the record at her hearing. (*Id.*)

Ms. Cohen also testified that Claimant's employment was terminated because she engaged in *ex parte* communications and encouraged claimants to withdraw their appeals without having a hearing in violation of Employer's Code of Conduct and the claimants' due process rights. (*Id.* at 51, 66, 89–90.) Ms. Cohen testified about the procedure referees must follow in or-

der to hold pre-hearing conferences, which requires referees to go on the record if testimony is given. (*Id.* at 156.) Ms. Cohen testified that Claimant was trained on due process and pre-hearing conference procedures. (*Id.* at 91, 157.)

Ms. Huffman testified that she was scheduled to attend a hearing before Claimant on a non-fault overpayment. (*Id.* at 25.) Ms. Huffman testified that she planned to address two issues in her hearing: (1) whether she filed her appeal in a timely manner, and (2) whether she qualified for financial hardship. (*Id.* at 26.) Ms. Huffman testified that when she went before Claimant, Claimant never turned on the recorder and instead asked Ms. Huffman why she was there. (*Id.*) Ms. Huffman testified that Claimant informed her that her appeal was untimely, there was nothing that Claimant could do, and thus it would be a waste of their time to hold a hearing. (*Id.* at 26–27.) Ms. Huffman further testified that Claimant never allowed her to testify as to why her appeal was untimely or why she qualified for financial hardship. (*Id.* at 27.) Ms. Huffman testified that she withdrew her appeal because Claimant told her to do so. (*Id.* at 28.) Ms. Huffman also testified that Ms. Cohen contacted her to ask why her hearing was not held, which led to her filling out a witness statement and filing another appeal. (*Id.* at 28–29.)

Ms. Eaton testified that she became involved in the investigation after Ms. Cohen contacted her. (*Id.* at 95.) Ms. Eaton testified to the following timeline of events regarding Employer's administrative process for investigating misconduct. Employer commenced its investigation of Claimant on May 5, 2011, when Ms. Cohen began to investigate Claimant's hearings after she noticed an issue with Claimant's overtime requests. (*Id.* at 97.) Ms. Eaton testified that on June 20, 2011, Employer

held a fact-finding conference, after which Claimant and her union representative asked for additional time to respond to issues raised at the fact-finding conference. (*Id.* at 98.) Ms. Eaton testified that Ms. Cohen contacted Ms. Huffman and received a written witness statement from Ms. Huffman on July 11, 2011. (*Id.* at "Employer's Ex. 5.") Ms. Eaton testified that Claimant provided Employer with a seven-to-eight page, single-spaced response to the fact-finding conference on July 22, 2011. (*Id.* at 99.) Ms. Eaton testified that Employer then commenced an investigation of the allegations Claimant made in her response. (*Id.*) Ms. Eaton testified that it took her a month to investigate these allegations. (*Id.*)

Ms. Eaton also testified that both she and her supervisor were on vacation for a combined total of three and a half weeks after receiving Claimant's response. (*Id.*) Employer's investigation concluded in September 2011, and Employer terminated Claimant's employment on September 23, 2011. (*Id.* at "Employer's Ex. 9.") Ms. Eaton also testified that Employer's administrative process for investigating suspected misconduct involves investigating the relevant documents and facts and holding a fact-finding conference. (*Id.* at 108.) Ms. Eaton explained that Claimant was permitted to return to work, but her work was closely monitored. (*Id.*) Ms. Eaton testified that the decision to terminate Claimant was a collaborative decision made by her and her supervisors. (*Id.* at 106.)

In response, Claimant testified that she conducted pre-hearing conferences with parties, specifically describing her version of a pre-hearing conference as one where referees explain to the parties what will happen at the hearing. (*Id.* at 113.) Claimant also testified that she was unaware of the rule requiring that pre-hearing conferences of this nature be recorded. (*Id.*) Claimant testified that during the fact-finding conference, she answered questions about overtime, internet usage, and cases where there was no record and the parties withdrew their appeals. (*Id.* at 119.) Claimant testified that, when she met with Ms. Huffman, she did not tell Ms. Huffman to withdraw her appeal or that it was a waste of time to hold a hearing. (*Id.* at 120.) Claimant testified that her understanding of *ex parte* is "when there are two parties to a hearing and [she] has communications about the substance of the issues in the case with one party and the other party is not there and has not been notified." (*Id.* at 122.) Claimant admitted that the Department is a standing party in every proceeding. (*Id.* at 128.) Claimant also testified that she is aware that the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251, require that notice of a pre-hearing conference be given, and that she did not give notice. (*Id.* at 129.) Claimant testified that it is common referee practice to hold informal pre-hearing conferences, but notice is not given because of the conferences' informal nature. (*Id.* at 130.) Claimant also admitted that the law allows a party to a non-fault hearing to offer testimony, and, similarly, a party who files an untimely appeal can offer testimony as to why the appeal was untimely. (*Id.* at 133.) Claimant testified that the only reason she spoke to parties prior to a hearing was to explain the issues to them. (*Id.* at 135.)

Claimant's witness, Ms. Betti, an appeals referee and union representative, testified that when she is asked a question by a claimant before the hearing she answers it, particularly in non-fault overpayment hearings. (*Id.* at 142.) Ms. Betti clarified that she never had an *ex parte* communication with a party where she urged the party to withdraw an appeal.

(*Id.* at 147.) Ms. Betti admitted that in one-party hearings, she has had conversations about the substantive issues off the record, usually when a claimant asks a question. (*Id.* at 148.)

Following the hearing, the Board issued a decision, which affirmed the Service Center's determination denying unemployment compensation benefits pursuant to Section 402(e) of the Law. The Board made the following relevant findings:

2. The employer maintains a Code of Conduct for Pennsylvania Unemployment Compensation Referees (Code of Conduct) (Exhibit E–1) that provides that appeals Referees "shall accord to all persons who are legally interested in a proceeding or their lawyer, a full right to be heard according to law and, except as authorized by the law, shall neither initiate nor consider *ex parte* or other communications made to the Referee outside the presence of the parties as to substantive matters concerning a pending proceeding or claim."

. . . .

4. The employer at orientation training provided the claimant with the Code of Conduct and trained her on it.

5. It is not uncommon for a Referee to explain issues to a party prior to a hearing when questioned by a party in a one-party hearing.

. . . .

7. Upon further investigation, the program manager found a recording from a hearing on May 5, 2011. After the hearing concluded, the claimant forgot to turn off the recorder and it recorded a fifteen-minute personal telephone conversation of the claimant. The recorder then recorded the claimant calling in Malak M. Labeeb for his scheduled hearing.

8. The claimant told Mr. Labeeb that an overpayment determination had become final, that there was nothing she could do about it, and that he would not have to pay it back unless he received future benefits. The recording suddenly ended.

9. The claimant did not begin an official hearing.

10. Mr. Labeeb eventually withdrew his appeal.

. . .

14. On June 23, 2011, Amy Huffman appeared for hearings scheduled in front of the claimant on her appeals of two separate determinations.

. . . .

17. The claimant looked through Ms. Huffman's file and told her that her appeal to the first determination was late and that she should withdraw the appeal. The claimant did not allow Ms. Huffman to offer a reason, on or off the record, for her late appeal.

18. The claimant then told Ms. Huffman that she was overpaid benefits and that, because she was receiving UC benefits, she had to repay the overpayment. The claimant told Ms. Huffman that it would be a waste of their time to hold a hearing and that she should withdraw the appeal.

. . . .

23. On June 30, 2011, the employer conducted a fact-finding conference in which the claimant was questioned.

24. The claimant was permitted to return to work and file a written response. The employer monitored the claimant's work.

25. On July 22, 2011, the claimant followed up with a 7–8 page, single-spaced written response to the allegations.

26. The employer investigated the allegations made by the claimant in the written response. The human resources representative helping in the investigation was absent for two and one-half weeks during this time, while her supervisor was absent for one week.

27. Following the investigation, by letter dated September 23, 2011, the employer terminated the claimant's employment for, among other things, violation of its Code of Conduct in initiating *ex parte* communications with parties and encouraging them to withdraw their appeals without affording them their due process rights of a hearing.

(C.R., Item No. 37.)

After rendering the above factual findings, the Board noted that each party filed various motions and requests before and after the hearing. As to Claimant's objections to what she referred to as the Board's "assumption of jurisdiction," the Board concluded that Section 504 of the Law supports the Board's decision to transfer the matter to itself, because the Board provided Claimant with the opportunity for a full and fair hearing before an impartial tribunal. (*Id.* at 5.) The Board denied Claimant's request that the entire Board recuse pursuant to 34 Pa.Code § 101.62.[3] The Board reasoned that its members are not interested parties because referees are appointed by the Secretary of Labor and Industry, not the Board. (*Id.* at 4.) The Board further reasoned that the Board members were not involved in any way with Employer's investigation or termination of Claimant's employment. (*Id.*)

Claimant also asserted that the hearing officer erred in denying two requests for continuances that she filed in order to seek more time to serve subpoenas. The Board concluded that Claimant did not offer good cause as to why her continuance requests should have been granted to allow more time, because Claimant should have served the subpoenas prior to the hearing. (*Id.* at 6.) Claimant also requested that the Board re-open the record for the purpose of allowing Claimant to serve the subpoenas and introduce the subpoenaed materials. The Board denied this request, again reasoning that Claimant's delay caused her failure to serve the subpoenas. (*Id.*) Additionally, the Board reasoned that there was no impropriety by the hearing officer, and the hearing officer did not err in allowing Employer's witness to testify to her understanding of *ex parte* communications, because Claimant's representative did not object. (*Id.* at 7.)

Concerning the merits, the Board determined Claimant to be ineligible for benefits as a result of willful misconduct for two reasons. First, the Board determined that Claimant violated Claimant's Code of Conduct by engaging in *ex parte* communications. (*Id.* at 8.) Second, the Board determined that Claimant engaged in conduct beneath the standards of behavior that Employer had a right to expect when she encouraged parties to withdraw their appeals prior to their scheduled hearing. (*Id.* at 10.) The Board also concluded that the remoteness doctrine did not apply, because Employer justified the delay in terminating the Claimant's employment. (*Id.*) The Board concluded that it properly considered the findings ruled on in the Notice of Determination. (*Id.*) Claimant

---

3. Section 101.62 of the Department's regulations provides that "[n]o Referee, member of the Board or employe of the Department shall participate in the hearing or determination of any case in which he himself is an interested party. The Board will designate an alternate to serve in the absence or disqualification of any referee." 34 Pa.Code § 101.62.

now appeals the Board's decision to this Court.

## II. ISSUES ON APPEAL

■ On appeal,[4] Claimant raises several issues. The first set of issues relates to the various motions and requests Claimant filed prior to and during the hearing. Claimant argues that the Board erred in transferring her claim to the Board, because her claim was not pending before a referee as required under the statute. Claimant also contends that the Board abused its discretion when it denied her continuance requests and her request to re-open the record. Claimant also argues that the Board violated her constitutional right to confront and cross-examine witnesses when it denied her continuance requests and her request to re-open the record. Claimant also contends that the Board erred in denying her request for recusal, because denying her request violated her constitutional right to due process.

The second set of issues relates to the merits of the Board's decision. Claimant argues that substantial evidence does not exist to support the Board's findings of fact regarding her encounter with Amy Huffman, because Ms. Huffman is not a credible witness.[5] Claimant also argues

4. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Review for capricious disregard of material evidence is an appropriate component for appellate review in every case in which such question is properly brought before the court. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

5. Claimant also appears to argue that the Board capriciously disregarded evidence that: (1) Claimant did not engage in *ex parte* communication, (2) Claimant had good cause for her action, (3) Claimant did not deliberately or knowingly violate any rule, and (4) Employer did not conduct an investigation of *ex parte* communications or monitor her conduct after July 7, 2011. When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important. *Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n. 4 (Pa.Cmwlth.2007). We have characterized capricious disregard of evidence as "a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v.*

*Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa.Cmwlth.), *appeal denied*, 585 Pa. 692, 887 A.2d 1243 (2005). In the case now before the Court, Claimant and Employer both presented testimony regarding the circumstances surrounding Claimant's separation from employment. We cannot conclude that the Board capriciously disregarded evidence. Rather, the Board considered testimony presented by both Employer and Claimant and made its own determinations regarding the credibility of the witnesses and the weight to be afforded the evidence. The evidence Claimant asserts that the Board capriciously disregarded was contradicted by evidence submitted by Employer. (C.R., Item No. 19 at 49–50, 99, 106–09.) In an unemployment compensation case, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 509 Pa. 267, 272, 501 A.2d 1383, 1386 (1985). Thus, in the face of conflicting evidence, the Board exercised its discretion to resolve evidentiary conflicts, and its credibility determinations "are not subject to re-evaluation on judicial review." *Peak*, 509 Pa. at 276–77, 501 A.2d at 1388. The focus of our review, therefore, is whether substantial evidence exists to support the factual findings rendered by the Board. In addition, we note that Claimant appears simply to be re-arguing the points she asserts in the section of her brief regarding willful misconduct. We feel these arguments are more appropriately suited towards Claimant's

that the Board committed an error of law by concluding that Claimant's actions constituted willful misconduct. Claimant further contends that her discharge was too remote in time from the alleged misconduct to deny her benefits. Claimant also contends that the Board erred by making its decision based on charges that were not set out in the Notice of Determination.

## III. DISCUSSION

### A. Transfer to Board

■ Claimant objects to the transfer of this matter to the Board. She believes that her due process rights were violated when the Board denied her a referee-level appeal. The Board transferred this matter pursuant to Section 504 of the Law because Claimant was a former referee. Claimant argues that she is being denied an additional opportunity to present evidence because, she contends, parties are often able to present additional evidence and testimony before the Board after already presenting testimony and evidence before a referee. Claimant further maintains that, because her claim was never "pending before a referee," the Board improperly applied Section 504.

Section 504 of the Law provides, in pertinent part:

The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence. When any claim pending before a referee is removed or transferred to the board, the board shall afford the parties and the department reasonable opportunity for a fair hearing.

Thus, Section 504 of the Law specifically gives the Board the power to "remove ... any claim pending before ... a referee," so long as the parties are provided with a "reasonable opportunity for a fair hearing."

Here, the Board provided Claimant with a fair hearing before an impartial hearing officer. The hearing officer conducted the evidentiary hearing and certified the record for the Board, but the hearing officer did not rule on the outcome of the claim. Although Claimant takes issue with the hearing officer's experience in unemployment compensation matters and argues that the hearing officer committed several errors during the hearing that affected her due process rights, Claimant does not specifically identify any errors she believes the hearing officer made. Claimant's argument that the Board's transfer of this matter denied her the opportunity to present additional evidence and testimony is also without merit. If the Board had not transferred the matter and Claimant had received a hearing before a referee, Claimant would not necessarily be able to present additional evidence and testimony to the Board as she claims. The Board, in its discretion, may accept additional evidence or remand the matter to a referee (or in this case a hearing officer) for the taking of additional testimony. Had the Board, in this instance, found the record to be lacking, it could have accepted additional evidence or remanded for further testimony. Thus, Claimant was not denied an opportunity to present additional evidence at the discretion of the Board. We agree with the Board, therefore, that Claimant's

contention that the Board erred in concluding her actions constituted willful misconduct.

due process rights were not violated by the transfer of this matter to the Board.

■ With regard to Claimant's contention that Section 504 of the Law is not applicable because her claim was never "pending before a referee," we agree with the Board that Claimant's claim was pending before a referee for all practical intents and purposes. Once Claimant filed an appeal of the Service Center's determination, her claim became pending before a referee, because generally that is the first level of available appeal. Claimant, nevertheless, contends that her claim should have been scheduled for a referee hearing and then removed by the Board. To the extent that the language could be interpreted to require the Department to assign the matter to a referee or schedule a hearing before a referee prior to the Board assuming jurisdiction and then "remove" the matter prior to the referee conducting the hearing, failure to do so in this case would constitute a harmless error, because it would have no material effect on the outcome of this case. Ultimately, the case would be removed by the Board regardless of whether the Department previously assigned the matter to a referee or scheduled a hearing. Thus, Claimant's argument is without merit.

## B. Requests to Continue Matter and Re–Open Record

We next address Claimant's contention that the Board abused its discretion by denying Claimant's continuance requests and denying Claimant's request to re-open the record. We begin with a recitation of the relevant facts regarding Claimant's requests for a continuance and request to re-open the record.

On November 17, 2011, Claimant's representative requested subpoenas for the claims and appeals records of Irina Krements and Amy Huffman. (C.R., Item No.

11 at H.O. Ex. 11.) On November 18, 2011, Lucinda Naylor, the Docket Clerk, informed Claimant's representative that her subpoena requests were denied because she did not provide the requisite offer of proof with her requests. (*Id.* at H.O. Ex. 13.) On December 8, 2011, Claimant's representative again requested subpoenas for the claims and appeals records of Irina Krements and Amy Huffman with the requisite offer of proof. (C.R., Item No. 15 at H.O. Ex. 17.) Employer filed an objection to both of Claimant's requests for subpoenas on December 9, 2011. (C.R., Item No. 16 at H.O. Ex. 18.) The hearing officer granted Claimant's requests for the subpoenas of the appeals records of Irina Krements and Amy Huffman on December 12, 2011, and Ms. Naylor advised Claimant's representative on December 13, 2011, that the hearing officer signed the subpoenas. (C.R., Item No. 17 at H.O. Ex. 19.) Claimant's representative instructed Ms. Naylor that the subpoenas should be mailed to her. (*Id.*)

Claimant filed a request for a continuance on December 16, 2011, for the December 19, 2011 hearing because she did not receive the subpoenas until December 15, 2011, and could not effectively complete service before the hearing. (C.R., Item No. 18 at H.O. Ex. 20.) The hearing officer denied Claimant's request for a continuance on December 16, 2011, and instructed Claimant that the subpoenas could be served on that same day. (*Id.* at H.O. Ex. 21.) At the hearing before the hearing officer, Claimant renewed her request for a continuance, which the hearing officer denied. (C.R., Item No. 19 at 10.) On January 24, 2012, Claimant filed with the Board a request to re-open the record, arguing that the hearing officer's rulings on her continuance requests and other issues violated Claimant's right to confront and cross-examine Employer's witnesses.

(C.R., Item No. 24.) The Board denied Claimant's request to re-open the record on January 26, 2012. (C.R., Item No. 26.)

■ We first address Claimant's contention that the Board abused its discretion by affirming the hearing officer's decision denying Claimant's requests for a continuance, because (1) Claimant presented evidence of proper cause to grant her continuance requests, and (2) the hearing officer expressed bias towards Claimant. Claimant argues that she had proper cause to request the continuance, because she did not receive adequate time to serve a subpoena for Ms. Huffman's appeals records. The Board asserts that the hearing officer did not abuse her discretion in denying Claimant's continuance request, because Claimant had adequate time to prepare for the hearing and Claimant's delay caused the shortened time period for service of the subpoenas.

■ An abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will. *Van Dine v. Gyuriska*, 552 Pa. 122, 124, 713 A.2d 1104, 1105 (1998). An abuse of discretion is not merely an error of judgment. *Id.* Under 34 Pa.Code § 101.23, a continuance is granted "only for proper cause and upon the terms as the tribunal may consider proper." A denial of a continuance will not be overturned unless there is an abuse of discretion. *Skowronek v. Unemployment Comp. Bd. of Review*, 921 A.2d 555, 558 (Pa.Cmwlth. 2007). To determine whether the hearing officer abused its discretion, the reviewing court must examine the circumstances surrounding the denial of the continuance request. *Id.* Any last-minute continuance requests are not "viewed favorably by this Court." *Id.*

■ Claimant argues that the hearing officer abused her discretion in denying Claimant's requests for continuance, because she had proper cause for a continuance request based on the fact that she was unable to serve her subpoenas prior to the hearing on December 19, 2011. The Board reasoned, however, that Claimant's delay in re-submitting the subpoena requests with the requisite offer of proof is what ultimately prevented her from serving the subpoenas in time. The Board discredited Claimant's contention that her representative did not receive notice of the hearing officer's denial of her November 17, 2011, subpoena request until December 8, 2011, which is why her representative waited until December 8 to re-submit her request. Rather, the Board found that Claimant's representative was informed of the denial on November 18, 2011. Claimant then further delayed the process by requesting that the subpoenas be mailed to her once they were signed on December 13, 2011, thus leaving herself with the short time frame. Although Claimant could not serve the subpoenas on December 15, 2011, because Employer's office was closed due to a building emergency, the Board found that Claimant did not establish that she could not have served the subpoenas on December 16, 2011, when the building re-opened. Claimant, instead, requested a continuance on December 16, 2011, for a hearing the following Monday, December 19, 2011, which the hearing officer denied as untimely.[6] Given

6. Claimant attached an email, dated December 16, 2011, to her brief as evidence; however, this email is not part of the certified record. Claimant contends that the email is part of H.O. Exhibit 22, which she alleges is incomplete. It is well-settled that the Court may not consider information attached to a brief but not part of the certified record. *Croft v. Unemployment Comp. Bd. of Review*, 662 A.2d 24, 28 (Pa.Cmwlth.1995). Because

the above circumstances, we cannot conclude that the hearing officer abused her discretion in denying Claimant's requests for a continuance.

As to Claimant's argument that the hearing officer abused her discretion in denying her requests for a continuance because the hearing officer expressed bias when she denied Claimant's requests for a continuance, Claimant attempts to show that the hearing officer showed preferential treatment to Employer. Specifically, Claimant contends that the hearing officer acted with bias when she granted Employer's November 8, 2011, request for a continuance without scrutiny and granted Employer's November 14, 2011, request for subpoenas. The record reveals that Employer submitted its request for a continuance on November 8, 2011, for the first hearing scheduled for November 22, 2011, because of a scheduling conflict. (C.R., Item No. 9.) Employer's request was made two weeks prior to the date of the hearing, versus Claimant's request, which Claimant made one business day prior to the scheduled hearing. Additionally, Employer also submitted its subpoena requests with the requisite offer of proof. (C.R., Item No. 10.) Claimant failed to provide an offer of proof with her requests, which caused the hearing officer to deny her initial subpoena requests. The hearing officer did not exhibit bias by granting Employer's requests when Employer followed the correct procedural guidelines well in advance of the hearing and Claimant failed to do the

same. Thus, the hearing officer did not abuse her discretion by denying Claimant's requests for a continuance.

■ We next address Claimant's contention that the Board abused its discretion by refusing to re-open the record. Claimant relies on the argument she previously raised, stating that she did not receive adequate time to serve her subpoenas and the hearing officer expressed bias towards her. The Board argues that it was Claimant's delay that caused the shortened time span for service.

■ Pursuant to 1 Pa.Code § 35.231, a petition to re-open for the purpose of taking additional evidence must include facts that constitute grounds for re-opening the proceeding, including "material changes of fact or of law alleged to have occurred since the conclusion of the hearing." Whether to grant or deny a request to re-open the record is within the discretion of the presiding officer. *Al Hamilton Contracting Co. v. Dep't of Envtl. Res.*, 659 A.2d 31, 35 (Pa.Cmwlth.1995). On appeal, the decision of the presiding officer will not be reversed absent a clear abuse of discretion. *Id.*

Moreover, Claimant does not allege with specificity what, if any, "material changes of fact or of law ... have occurred since the conclusion of the hearing" to support re-opening the record. *See* 1 Pa.Code § 35.231. Claimant argues that the Board abused its discretion when it failed to re-

this email is not part of the certified record, we will not consider it on appeal. Claimant also describes as "hearsay" Hearing Officer Exhibit 13, which shows that the Docket Clerk notified Claimant's representative that the subpoena request was denied on November 18, 2011. Claimant, however, did not object to the admission of this document at the hearing, nor does she develop an argument on appeal that the document contained hearsay and should have been excluded from

consideration. (*See* C.R., Item No. 19 at 21.) Moreover, the email relates to a disagreement over whether claims records (in addition to the appeals records) should have been produced in response to the December 8, 2011 subpoenas, and it is of no relevance to the issue of delay. The hearing officer specifically ruled that the claims records were not relevant to the proceeding and declined to require their production. (C.R., Item No. 19 at 9–10.)

open the record, because as a result of the hearing officer's denial of the requests for continuance, she could not effectively cross-examine Ms. Huffman for purposes of impeachment. Because we previously concluded that the hearing officer did not abuse her discretion in denying the requests for continuance, we cannot conclude that the Board abused its discretion when it declined to re-open the record based on the hearing officer's denial of the requests for continuance.

## C. Constitutional Right to Cross–Examine

 We next address Claimant's argument that her constitutional right to confront and cross-examine witnesses was violated because of the denials of her continuance requests and her request to re-open the record. Claimant contends that she needed to review the claims and appeals record of Amy Huffman prior to the hearing, so she could refresh her recollection and effectively impeach Ms. Huff-

man's testimony.[7] The Board did not specifically address this issue in its brief.

 A party's due process rights include an opportunity to confront and cross-examine adverse witnesses. *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa.Cmwlth.2002); 2 Pa.C.S. §§ 504–05. As previously discussed, the hearing officer did not abuse her discretion in denying Claimant's requests for a continuance. It was Claimant's delay that resulted in her being unable to serve her subpoenas in time. Claimant is unable to show, therefore, how the Board intruded on her right to confront and cross-examine Ms. Huffman. It was through Claimant's own delay that she deprived herself of Ms. Huffman's appeals record for cross-examination.[8]

For the reasons set forth above, we conclude that the Board did not violate Claimant's right to effectively confront and cross-examine witnesses by denying Claimant's continuance requests and her request to re-open the record. Rather,

7. Claimant requested the appeals and claims records of both Amy Huffman and Irina Krements. The hearing officer only granted Claimant's subpoena for the appeals records of Ms. Huffman and Ms. Krements, and denied the subpoena for the claims records. The hearing officer did not believe the claims records were relevant to the case. (C.R., Item No. 19 at 9.) The law is well-settled that if a "subpoena would lead to relevant and probative testimony," then an unemployment compensation referee (or hearing officer, as in this case) is required to issue the requested subpoena. *York v. Unemployment Comp. Bd. of Review*, 56 A.3d 26, 31 (Pa.Cmwlth.2012), *appeal denied*, —— Pa. ——, 64 A.3d 633 (2013). The referee, or hearing officer, also has discretion to refuse to issue the subpoena when he finds that "the subpoena is being requested for purposes of harassment or to commence a fishing expedition." *Id.* Claimant does not argue that the hearing officer erred in only granting her subpoena in part and denying her access to claim records. Thus, Claimant has waived any argument that

the hearing officer erred in not granting her request to subpoena the claims records.

8. The Board asserts, in its brief, that Employer cured any prejudice asserted by Claimant because Employer provided Claimant with the subpoenaed appeals records prior to the hearing for Claimant's review, despite not being served with the subpoenas. A review of the record indicates that Employer did provide Claimant with records at the hearing, and the hearing officer took a brief recess to give Claimant adequate time to review the records. What is not clear is whether Employer brought the records for both Ms. Krements and Ms. Huffman. Regardless, Claimant's argument that the denial of her continuance requests and denial of her request to re-open the record hampered her ability to effectively cross-examine and confront witnesses is still without merit, because Claimant's failure to serve the subpoenas deprived her of the records she contends she needed to effectively cross-examine Ms. Huffman.

Claimant caused her own inability to review the appeals file prior to the hearing by an unexcused delay in serving the subpoenas.

### D. Recusal

We next address Claimant's argument that the Board abused its discretion when it denied her request for recusal of the entire Board. Claimant argues that the Board's refusal to recuse its members, in effect, violated her constitutional right to due process, because the Board is considered her employer, and, therefore, cannot also be the tribunal because, as her employer, it has a financial interest in her claim. Claimant also argues that the Board showed bias when it denied her request to re-open the record. The Board counters that it is not an interested party to this claim. The Board also asserts that the "rule of necessity" applies, because if all three Board members recused themselves, then the Board would effectively deny the parties a decision.

 Section 101.62 of the Department's regulations, 34 Pa.Code § 101.62, provides that "[n]o referee, member of the Board or employe of the Department shall participate in the hearing or determination of any case in which he himself is an interested party." In *Thomas v. Workmen's Compensation Appeal Board (Ida's Frosted Products, Inc.)*, 680 A.2d, 24 (Pa. Cmwlth.1996), this Court held that "[r]ecusal is only required when there is substantial reasonable doubt as to a referee's ability to preside impartially." *Thomas,* 680 A.2d at 26. Recusal is a matter to be determined by "individual discretion or conscience." *Id.* In order to show that recusal is warranted under the impartiality standard, the party requesting recusal must show "*facts* tending to show bias, interest, or other disqualifying events." *Commonwealth v. Jones,* 541 Pa. 351, 356,

663 A.2d 142, 145 (1995) (emphasis in original) (quoting *Reilly v. Se. Pa. Transp. Auth.,* 507 Pa. 204, 221–22, 489 A.2d 1291, 1300 (1985)). In *Tindal v. Workers' Compensation Appeal Board (City of Philadelphia),* 799 A.2d 219 (Pa.Cmwlth.2002), this Court stated that there is a presumption that "a workers' compensation judge can make the decision of whether or not to recuse for himself/herself. . . . To overcome this presumption, the party making the allegation . . . must show *actual bias on the record.*" *Tindal,* 799 A.2d at 223 (emphasis in original).

 With regard to whether recusal is appropriate for constitutional due process reasons, the Pennsylvania Supreme Court has adopted the United States Supreme Court's position in *Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), that the Fourteenth Amendment Due Process provision is only offended in matters relating to recusal when "the jurist has a '*direct, personal, substantial, pecuniary interest.*'" *Jones,* 541 Pa. at 357, 663 A.2d at 145 (emphasis in original) (quoting *Goodheart v. Casey,* 523 Pa. 188, 196, 565 A.2d 757, 761 (1989)). The type of interest that would warrant recusal "'cannot be defined with precision.'" *Goodheart,* 523 Pa. at 196, 565 A.2d at 761 (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). A judge's decision whether or not to recuse is only reversed if there is an abuse of discretion. *Thomas,* 680 A.2d at 26.

 As to whether the Board is an interested party and, therefore, should have recused itself, the Board recognized, and we agree, that it is subject to 34 Pa.Code § 101.62; however, it is not an interested party for purposes of Claimant's appeal. (C.R., Item No. 37 at 4.) As the Board points out, it does not participate in referee appointments. The Secretary of Labor and Industry is the party responsi-

ble for appointing referees.[9] Thus, although the Board and referees are part of the same Department, the Board is not involved in hiring referees. In its decision, the Board stresses that it was not involved in Employer's investigation of Claimant or Claimant's discharge from employment. (C.R., Item No. 37 at 4.) The Board, therefore, is not an interested party.

As to Claimant's argument that the Board expressed bias against her, Claimant does not allege any specific facts that show actual bias or show that the Board was involved in her discharge. Rather, Claimant only contends that the Board expressed bias when it denied her request to re-open the record. As previously discussed, the Board explained that it denied Claimant's request to re-open the record because Claimant made an untimely continuance request to the hearing officer and did not allege "material changes of fact or of law [that] have occurred since the conclusion of the hearing" that she would present if the Board re-opened the record. *See* 1 Pa.Code § 35.231. Further, in order to avoid the appearance of bias in the proceeding, the Board appointed an impartial hearing officer to preside over the evidentiary hearing and to certify the record, thereby granting Claimant a full and fair hearing. The Board, therefore, did not abuse its discretion in not recusing itself.

■■■■■ Moreover, the rule of necessity prevents recusal of all members of an agency because an agency is either statutorily or constitutionally bound to carry out its duties. *Stroudsburg Area Sch. Dist. v. Kelly*, 701 A.2d 1000, 1003 (Pa. Cmwlth.1997), *appeal denied*, 553 Pa. 710, 719 A.2d 748 (1998). The rule of necessity originates from a common law principle

that provides that "when all members of a tribunal or so many that there is not a quorum are subject to recusal, the tribunal must consider the case despite the personal interest or bias of its members, because otherwise the agency could not carry out its duties and the litigants would be denied a decision in the matter." *Id.* The Board, therefore, is required to consider a case even if all of its members are subject to recusal because it is bound to carry out its duties regardless. Claimant's argument that all Board members must recuse themselves is without merit, because the Board is bound to carry out its duty and render a decision. Despite Claimant's suggestion to the contrary, there is no other individual or body authorized by statute or otherwise permitted by law to hear her appeal. Under the rule of necessity, therefore, the Board did not err in refusing to recuse itself from Claimant's case.

### E. Substantial Evidence

■■■■ We turn next to the merits of the claim and Claimant's contention that substantial evidence of record does not exist to support the Board's findings of fact numbers 17 and 18, relating to Claimant's encounter with Ms. Huffman. Claimant appears to argue several times in her brief that the Board erred in finding Ms. Huffman's testimony credible, because Claimant never encouraged Ms. Huffman to withdraw her appeal during their conversation. (Claimant's Brief at 38.) Essentially, Claimant argues that the Court should believe her version of the encounter between her and Ms. Huffman, rather than Ms. Huffman's account. The Board does not specifically address this issue in its brief.

---

9. *See* Section 203 of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as* amended, 43 P.S. § 763(e).

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 94 Pa.Cmwlth. 24, 502 A.2d 738, 740 (1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 506 Pa. 274, 286, 485 A.2d 359, 365 (1984). In an unemployment case, the Board is the final finder of fact and arbiter of credibility. *Johnson v. Unemployment Comp. Bd. of Review*, 744 A.2d 817, 820 (Pa.Cmwlth. 2000). The Board is also empowered to resolve conflicts in evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa.Cmwlth.2004).

Ms. Huffman testified at the hearing that Claimant never asked her why her appeal was late. Ms. Huffman also testified that Claimant informed her that it would be a waste of time for her to continue with the appeal and she should withdraw it. (C.R., Item No. 19 at 35.) Claimant denied that she informed Ms. Huffman that holding a hearing would be a waste of time. (*Id.* at 120.) The Board credited Ms. Huffman's testimony over Claimant's. The Board is entitled to make credibility determinations and, therefore, based on Ms. Huffman's credited testimony, substantial evidence exists to support the Board's findings that Claimant did not ask Ms. Huffman why her appeal was late and that Claimant told Ms. Huffman that holding a hearing would be a waste of time.

## F. Willful Misconduct

We next address Claimant's contention that the Board erred in concluding that Claimant's actions rose to the level of willful misconduct.[10] Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 368 (Pa.Cmwlth.2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 573 Pa. 594, 600, 827 A.2d 422, 425 (2003).

An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the

---

10. Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v.* *Unemployment Comp. Bd. of Review*, 57 Pa. Cmwlth. 186, 425 A.2d 1203, 1205 (1981).

rule or policy and that the claimant violated it. *Walsh,* 943 A.2d at 369. The employer must establish that the employee's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review,* 93 Pa.Cmwlth. 524, 501 A.2d 716, 717 (1985). "[A]n inadvertent violation of an employer's rule may not constitute willful misconduct." *Eshbach v. Unemployment Comp. Bd. of Review,* 855 A.2d 943, 947 (Pa.Cmwlth.2004). Once an employer has met its burden, however, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review,* 155 Pa. Cmwlth. 267, 625 A.2d 112, 114 (1993). The employee establishes good cause where his actions are justified or reasonable under the circumstances. *Chapman v. Unemployment Comp. Bd. of Review,* 20 A.3d 603, 607 (Pa.Cmwlth.2011).

■ Here, the Board determined Claimant to be ineligible for benefits as a result of willful misconduct based on a violation of Employer's Code of Conduct (relating to *ex parte* communications) and based on conduct beneath the standards of behavior that Employer had a right to expect (relating to encouraging claimants to withdraw their appeals prior to their scheduled hearing).

With regard to the purported *ex parte* communications, the Board reasoned that Employer's "Code of Conduct specifically prohibits an appeals referee from 'initiat[ing] ... or consider[ing] *ex parte* or other communications made to the referee outside the presence of the parties as to substantive matters concerning a pending proceeding or claim.'" (R.R., Item No. 37 at 8.) Although the Board accepted "as credible the testimony ... that often times referees will counsel a party to a one-party hearing on the issues involved if that party asks a question prior to the hearing," the

Board reasoned that this is not what Claimant was doing. (*Id.*) The Board further reasoned that referees sometimes answer a party's questions prior to a hearing, but Claimant initiated the off-the-record conversations on substantive issues which eventually resulted in the parties withdrawing their appeals. (*Id.* at 9.) Thus, the Board determined those communications to be prohibited *ex parte* communications.

The Board accepted that referees frequently engage in off-the-record discussions with just one party in order to advise the party regarding aspects of the proceedings before the referee in instances where only one party appears at the hearing. The Board differentiated between those circumstances and the circumstances in this matter based on the nature of the discussions. By doing so, it does not appear that the purported *ex parte* nature of Claimant's discussion was what the Board found to be improper. Rather, the substance of the conversation was the offending conduct, not the absence of the other party. We note that what the parties refer to as the *"ex parte"* provision of the Code of Conduct also prohibits "other communications made ... outside the presence of the parties as to *substantive matters.*" (*Id.* at 8 (emphasis added).)

The Board considered the substance of the communications (*i.e.,* encouraging parties to withdraw their appeals) in the context of the Code of Conduct and in the context of whether Claimant's conduct fell below the standards of behavior that Employer had a right to expect. The Board wrote:

> The claimant did not deny speaking to parties to a hearing off the record prior to the hearings, but asserted that she was merely holding informal "pre-hearing conferences" to address questions asked by the parties. The Board ac-

cepts as credible the testimony of the claimant's representative and witness that oftentimes referees will counsel a party to a one-party hearing on issues involved if that party asks a question prior to the hearing. However, the Board accepts the testimony and evidence offered by the employer that this is not what the claimant was doing.

. . . .

While offering an explanation to parties as to the issues may have been a common practice, encouraging parties to withdraw their appeals off the record was certainly beneath the standards of behavior this employer has a right to expect of an employee. The claimant's testimony that the practice was common and that she did not deliberately violate the employer's policy is rejected. Moreover, the claimant has not shown good cause for the policy violations. Consequently, the employer has proven that the claimant was terminated from employment due to willful misconduct.

(*Id.* at 10.)

As noted above, the Board found that Claimant was not merely answering questions posed by the parties. Rather, Claim-

ant initiated the 29 conversations with Mr. Labeeb [11] and Ms. Huffman and encouraged them to withdraw their appeals prior to a hearing, thereby depriving them of their due process right to a hearing. The Board determined that such conduct fell below the standards of behavior that Employer had a right to expect from Claimant. The Board, therefore, did not err in concluding that Claimant's actions rose to the level of willful misconduct.

Claimant, nevertheless, argues that her conduct was justified because, she claims, it is common practice for a referee to conduct this type of pre-hearing conference with a claimant with a non-fault overpayment to discuss the possibility of withdrawal of the appeal.[12] The Board, as the fact finder, specifically rejected this testimony. Claimant, therefore, did not establish good cause for her actions.

Thus, the Board did not err in concluding that Claimant's conduct of engaging in off-the-record conversations with Mr. Labeeb and Ms. Huffman, encouraging them to withdraw their appeals and not exercise their due process right to a hearing, regardless of whether those conversations

---

11. The Board noted that the transcript of the unintentionally recorded conversation between Claimant and Mr. Labeeb establishes that Claimant initiated the conversation with Mr. Labeeb. (R.R., Item No. 37 at 8.) The conversation, which addressed the substance of the appeal, went as follows:

R[eferee]: Have a seat. Okay. Now, do you speak English at all?
UM [Mr. Labeeb]: No.
R: No English? Okay. Before I get started, there's really not anything I can do about this.
UM: What do you mean? I don't understand.
R: You received unemployment benefits for these weeks. A Referee decided that you were not entitled to the benefits. That Decision became final, so the money that you received is considered to be an over-

payment. And you don't have to repay it unless you get future benefits, and they will take a portion of those benefits to repay this money.
UM: Can I say something to you?
R: Sure.
UM: You guys will get the money back, you know, at the end because it's fair. You know. It's fair. But you know, I have to express my feeling, you know, too, my personal feeling. [End of recording.]
(*Id.*; C.R., Item No. 37 at "Employer's Ex. 13.") Mr. Labeeb then withdrew his appeal.

12. Claimant's representative attempted to testify in this respect, but the hearing officer sustained an objection to that testimony, and the Board affirmed that ruling. (C.R., Item No. 19 at 161.) Claimant does not appeal that ruling.

could be considered to be *ex parte* communications, constituted a violation of the Code of Conduct and a disregard for standards of behavior which Employer could rightfully expect of a referee. Moreover, the Board did not err in concluding that Claimant failed to establish good cause for engaging in the conduct.

### G. Remoteness

We next address Claimant's argument that her termination from employment on September 23, 2011, was too remote in time from the communications with Mr. Labeeb and Ms. Huffman on May 5 and June 23, 2011, respectively, to deny her benefits. Claimant contends that Employer delayed the termination of Claimant's employment without good cause, because Employer concluded its investigation well before September 2011. The Board contends that the delay was justified, because Employer followed its own administrative process for investigating misconduct.

■ The remoteness doctrine provides that "[a]n incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Tundel v. Unemployment Comp. Bd. of Review,* 44 Pa. Cmwlth. 312, 404 A.2d 434, 436 (1979). In *Tundel,* the claimant admitted to sleeping on the job and was discharged twenty-five days later. *Id.* The Court found that the 25–day delay in discharging the claimant indicated that the employer did not consider the sleeping incident to be willful misconduct, and, by allowing claimant to continue working, the employer condoned the behavior. *Id.* This principle is reiterated in *Raimondi v. Unemployment Compensation Board of Review,* 863 A.2d 1242 (Pa.Cmwlth.2004), where the Court explained that the remoteness doctrine prevents an employer from seeking a denial of benefits based on willful misconduct only when there is an *"unexplained* substantial delay" between the claimant's misconduct and the employer's discharge of the claimant. *Raimondi,* 863 A.2d at 1247 (emphasis in original). If an employer establishes on the record that there is an explanation for the delay and that the employer does not condone the claimant's conduct, then the remoteness doctrine does not apply. *Id.* An explanation for the delay may include a description of "the lengthy nature of the employer's administrative review process." *Id.* In *Raimondi,* the employer successfully established that during a seventy-four day period, it was actively investigating the claimant's misconduct and going through an administrative review process. *Id.* The Court concluded that the remoteness doctrine did not apply, because the employer did not condone the claimant's behavior and established an explanation for the delay in discharging the claimant. *Id.*

■ A review of the record reveals that Employer delayed its discharge of Claimant because it was conducting the necessary steps in its own administrative review process and investigating Claimant's conduct. The Board found that Employer's administrative process for investigating misconduct includes investigating all the relevant documents and facts and holding a fact-finding conference. Employer conducted an involved initial investigation that included contacting ten to fifteen parties before holding a fact-finding conference in late June. After this conference, Employer then diligently investigated all allegations Claimant made in a response letter to the fact-finding conference, which was not received until July 22, 2011. Claimant does not present any evidence that suggests Employer was not investigating Claimant's case between May 5 and September 23, 2011. We agree, therefore, with the Board that Em-

ployer offered a sufficient explanation for the delay between the misconduct and Claimant's discharge. (C.R., Item No. 37 at 10.)

Claimant also argues that the delay demonstrated that Employer condoned her actions. The Board found that Employer monitored Claimant's conduct after the fact-finding conference. Because Employer monitored Claimant's conduct after the fact-finding conference to ensure that Claimant did not engage in other misconduct while it proceeded with the investigation, the Board did not err in concluding that Employer did not condone Claimant's conduct. We agree, therefore, with the Board that Claimant's discharge was not too remote from the misconduct to deny benefits.

## H. Notice of Determination

We last address Claimant's contention that the Board erred in making its determination based on other charges not set forth in the Notice of Determination. The Notice of Determination found that Claimant violated Employer's rule that prohibited referees from engaging in *ex parte* communications with parties to hearings. (C.R., Item No. 4.) Claimant contends, and we agree, that the Board considered other allegations besides the allegation that she engaged in *ex parte* communications. Specifically, the Board considered whether Claimant encouraged parties to withdraw their appeals, thereby discouraging them

from exercising their due process right to a hearing.

Section 101.87 of the Department's regulations, pertaining to issues considered on original appeal, provides:

When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa.Code § 101.87. Under Section 101.87 of the regulations, generally "evidence adduced and determinations made at the referee's hearing must be limited to the legal issues *ruled on* " in the decision from which the appeal was filed. *Simmons v. Unemployment Comp. Bd. of Review*, 129 Pa.Cmwlth. 315, 565 A.2d 829, 832 (1989) (emphasis in original), *aff'd*, 528 Pa. 590, 599 A.2d 646 (1991). The purpose of the rule is to prevent prejudice by ensuring that parties are notified of any issues to be adjudicated. *Id.* "The regulation has been interpreted to allow the [r]eferee to consider other issues so long as the claimant is not surprised or prejudiced." [13] *Sharp*

---

**13.** We note that Section 101.107 of the Department's regulations, 34 Pa.Code § 101.107, pertaining to issues considered on appeal, provides:

(a) In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings. However, issues not previously considered

or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

(b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not ex-

*Equip. Co. v. Unemployment Comp. Bd. of Review,* 808 A.2d 1019, 1025 (Pa.Cmwlth. 2002). The proper relief to be afforded a party when the authorities violate Section 101.87 of the regulations is to remand for consideration of the issue. *Anthony v. Unemployment Comp. Bd. of Review,* 96 Pa.Cmwlth. 20, 506 A.2d 501, 503–04 (1986). Of course, as suggested above, remand is unnecessary when the critical factual basis on which eligibility turns remains the same and there is no shifting of the burden of proof, because there is no surprise or prejudice to a party that necessitates a remand. *Hine v. Unemployment Comp. Bd. of Review,* 103 Pa.Cmwlth. 267, 520 A.2d 102, 104–05 (1987).

Here, Claimant cannot establish surprise or prejudice. Employer informed Claimant in its letter of termination that the basis for the termination was Claimant's conduct of engaging in *ex parte* communications and failure to conduct proper hearings. (C.R., Item No. 2 at Ex. 11.) Claimant and Employer both addressed in their questionnaires and acknowledged throughout the hearing that Employer terminated Claimant's employment for violating Employer's Code of Conduct by engaging in *ex parte* communications *and* encouraging parties to withdraw their appeals, thereby depriving parties of their due process right to a hearing. (C.R., Item Nos. 2, 3, & 19 at 51, 66, 95–101.) Claimant does not contend that she was unaware that one of the bases for the termination of her employment was that she encouraged parties to withdraw appeals before a hearing. In its decision,

the Board concluded that Claimant was aware that her employment was terminated because she violated the .Employer's Code of Conduct by initiating *ex parte* communications and by encouraging parties to withdraw appeals, thereby denying them their due process rights. Moreover, the critical factual basis for both reasons for termination (*i.e.,* Claimant's conduct of engaging in off-the-record, pre-hearing discussions with claimants, encouraging the claimants to withdraw their appeals) is the same, and the burden of proof also remains the same. Because Claimant cannot establish unfair surprise or prejudice, we conclude that the Board did not err in considering whether Claimant's conduct of encouraging claimants to withdraw their appeals constituted willful misconduct.

## CONCLUSION

For the reasons set forth above, we affirm the order of the Board, denying benefits to Claimant under Section 402(e) of the Law.

## *ORDER*

AND NOW, this 8th day of October, 2013, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

pressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party,

will be substantially served thereby and are supported by the record.