# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Susan Wells, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 595 C.D. 2019 |
| | : | Submitted: September 20, 2019 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                      HONORABLE MICHAEL H. WOJCIK, Judge
                      HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE WOJCIK                                                    FILED: July 10, 2020

Susan Wells (Claimant) petitions *pro se* for review of the April 18, 2019 order of the Unemployment Compensation Board of Review (Board), which let stand as final a referee's determination that Claimant is ineligible for unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she voluntarily quit her job without a necessitous and compelling reason. For the reasons that follow, we vacate and remand to the Board for consideration on the merits.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). Section 402(b) provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to voluntarily leaving work without a cause of a necessitous and compelling nature.

Claimant was employed as a full-time program manager for Highmark Health (Employer) from May 2016, until November 7, 2018. When she resigned from her position, Claimant's final rate of pay was $133,800.00 annually plus bonuses. Claimant applied for UC benefits. The local service center determined that she was ineligible because she voluntarily quit her job without a necessitous and compelling reason. Claimant appealed the notice of determination, and a referee held a hearing.

Employer failed to appear at the hearing. Claimant, represented by counsel, testified that prior to June 2018, while her supervisor was Employer's vice president, she had received excellent performance reviews. N.T. 1/31/19 at 5.[2] In June 2018, Claimant began reporting to Employer's director of operations. *Id.* Claimant testified that she received a negative review from the director of operations in September 2018. *Id.* Claimant disagreed with the review and refused to sign it. *Id.* at 6.

Claimant testified that, on November 7, 2018, her new supervisor stopped her on her way to a meeting and presented her with two options: (1) resign from her position and receive her salary through the end of the month; or (2) be placed on a corrective action plan with work restrictions. N.T. 1/31/19 at 5. Under the corrective action plan, Claimant would be unable to interview for internal positions with Employer; she would be required to work nine-hour days; and she would lose her work from home privileges. *Id.* Claimant was given 24 hours to make a decision. *Id.* Claimant was then asked to turn in her laptop and badge and to clean out her desk, after which she was sent home for the day. *Id.* Claimant testified:

---

[2] "N.T. 1/31/19" refers to the transcript of the January 31, 2019 Referee's hearing.

[Claimant's Counsel] You've already discussed that there were two options presented to you. You did make the decision to terminate your employment voluntarily, correct?

[Claimant] That is correct.

[Claimant's Counsel] Why did you ultimately decide to do that?

[Claimant] There were multiple reasons. I was guaranteed a month's salary. My family needs my salary to pay our monthly bills. I could continue to pursue the internal opportunities which even as of current [sic] I'm being considered for three of them so I wanted to continue my upward mobility and my success within the company. *I knew that if I stayed on the corrective action I would ultimately be terminated and when you look for new opportunities the first thing you're asked is have you ever been terminated and that certainly eliminates you from pursuing other opportunities within Highmark.*

[Claimant's Counsel] Were any of the actions that were taken by [your supervisor] on November 7th indicative to you as to whether or not you would be continuing to (inaudible).

[Claimant] Absolutely I did not feel welcome particularly when my laptop was taken from me and I had meetings scheduled over the next several months. My badge was taken from me. I was not allowed to stay onsite. I had to clean out my desk and I was asked to leave the premises. I certainly felt that I was not welcome back and to continue in that role.

[Referee] So Ms. Wells I understand he's taken your laptop, he's told you if you stayed on there would be corrective action, you would have to work nine hour days, you wouldn't be allowed to work from home and you would be eliminated from applying for other jobs.

[Claimant] Exactly and as well as continuing with the interviews I had.

[Referee] So at that point you believed this gentleman's main goal was going to be to terminate your employment eventually?

[Claimant] Absolutely.

[Referee] *But at that time you were not being terminated but you would have been placed on a corrective action, correct?*

[Claimant] *That is correct.*

*Id.* at 7-8 (emphasis added).

After considering the testimony and documentary evidence, the referee found Claimant to be credible but determined that she was ineligible for UC benefits under Section 402(b) of the Law. Referee's 2/22/2018 Decision at 1-2. The referee found that Claimant "chose to resign to preserve her opportunities for other positions, and to avoid having a discharge on her employment record." *Id.* at 3. Claimant appealed to the Board.

Initially, the Board's Chairman indicated that he could not participate in the Board's disposition of the appeal due to a conflict of interest. Additionally, the Board noted that, due to a vacancy on the three-member panel and the recusal, it lacked a quorum to adjudicate the appeal. As a result, the Board issued an order in the name of both the Chairman and another Board Member, which stated that the referee's decision would stand as final.

In relevant part, the Board's order states:

> WHEREAS, because of a conflict of interest, Board Chairman Richard Bloomingdale could not participate in the Board's decision; and

> WHEREAS, the remaining Board Member does not constitute a quorum.

4

\* \* \*

## <u>ORDER</u>

The decision of the Referee stands as final.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW

Richard W. Bloomingdale, Chairman

Keren Putnam, Member

Board 4/18/19 Decision at 1. Claimant then petitioned this Court for review of the Board's order.

On appeal,[3] Claimant contends that the referee erred in determining she did not have a necessitous and compelling reason to voluntarily quit her job. Claimant argues that she could not work under the conditions imposed by the corrective action plan and that she wanted to maintain her clean employment record.

Preliminarily, we address the unusual procedural posture of this case. The Board, lacking a quorum to issue an effective determination on the merits of her appeal, let the referee's decision stand as final. Section 203(a) of the Law provides that "two members of the [Board] shall be a quorum, and no action of the [Board] shall be valid unless it shall have the concurrence of *at least two members*." 43 P.S. §763(a) (emphasis added).

However, the Law and the Board's regulations are silent as to how the Board should proceed in the absence of a quorum. Section 203(d) of the Law states, in pertinent part:

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704.

5

> Any . . . hearing or appeal which the [Board] has power to undertake, hold, hear or determine, may be undertaken, held or heard *by or before any one or more of the members of the [Board]*, but any determination, ruling or order of a member or members upon any such . . . hearing or appeal undertaken, held or heard by him or them, *shall not become and be effective until approved and confirmed by at least a quorum of the [Board]*.

43 P.S. §763(d) (emphasis added).

Based on the foregoing, we conclude that the rule of necessity requires the Board to consider and act on a determination of the merits of Claimant's appeal before allowing the referee's decision to become final. The rule of necessity originates from the common law principle that when all members of a tribunal, or so many that there is not a quorum, are subject to recusal, the tribunal must consider the case despite the personal interest or bias of its members, where otherwise the agency could not carry out its duties and the litigants would be denied a decision in the matter. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 717 (Pa. Cmwlth. 2013); *Stroudsburg Area School District v. Kelly*, 701 A.2d 1000, 1003 (Pa. Cmwlth. 1997); *Siteman v. City of Allentown*, 695 A.2d 888, 891-92 (Pa. Cmwlth. 1997).

In *Henderson*, the claimant was a former referee hired by the Pennsylvania Department of Labor and Industry. The claimant argued that the Board abused its discretion by refusing to recuse entirely from the appeal because the Board, as her employer, was interested in the claim. This Court found that the Board was not claimant's employer and was not interested in the claim. Further, we held that the rule of necessity prevented the recusal of all members of the Board because it is statutorily bound to carry out its duties and render a decision in the case. Despite the claimant's suggestion to the contrary, we observed that there is no other

6

individual or body authorized by statute or otherwise permitted by law to hear an unemployment compensation appeal.

Like *Henderson*, the rule of necessity requires the Board to consider the appeal in this case prior to deciding to affirm, modify, reverse or let stand as final the referee's decision. *Henderson.*

Accordingly, we vacate the Board's order and remand for consideration of the appeal on the merits.

<br>

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Wells,                          :
                                      :
                    Petitioner        :
                                      :
          v.                          : No. 595 C.D. 2019
                                      :
Unemployment Compensation             :
Board of Review,                      :
                                      :
                    Respondent        :

# **O R D E R**

AND NOW, this 10<u>th</u> day of <u>July</u>, 2020, the Order of the Unemployment Compensation Board of Review, dated April 18, 2019, is VACATED, and this matter is REMANDED to the Board for proceedings consistent with the foregoing opinion.

Jurisdiction is RELINQUISHED.

_____
MICHAEL H. WOJCIK, Judge