# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen A. Manley,                          :
                Petitioner        :
                                :
         v.                                 :
                                :
Unemployment Compensation                 :
Board of Review,                          :   No. 1893 C.D. 2017
                Respondent       :   Submitted: August 3, 2018

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: October 5, 2018

           Karen A. Manley (Claimant), *pro se*, petitions for review of the November 22, 2017 order of the Unemployment Compensation Board of Review (Board) that affirmed the determination of a Referee denying Claimant unemployment compensation benefits under Section 402(b) of the Pennsylvania Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Upon review, we affirm.

           Claimant was employed by The Restaurant School at Walnut Hill College (Employer) from 1997 to 2004 and from 2005 to 2007. Certified Record

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

(C.R.) Item No. 17, 11/29/16 Transcript of Testimony (T.T.) at 9-10.    Employer rehired Claimant in 2010 as an admissions representative.  Board's Finding of Fact (Board's F.F.) 1.  The work atmosphere at Employer's administrative offices was extremely permissive and bawdy humor between employees was tolerated.  Board's F.F. 2.

In February 2016, Employer hired a new supervisor (Supervisor).  Board's F.F. 6.  In April 2016, Supervisor angrily reprimanded Claimant when she took time off without first obtaining his approval.  Board's F.F. 9.  Claimant had consulted with human resources (HR) but did not obtain Supervisor's permission, as required by Employer.  Board's F.F. 9.  Supervisor unilaterally decided to suspend Claimant for two days.  Board's F.F. 8.  Claimant complained to Employer's vice president (VP) regarding her suspension as well as Supervisor's actions, and informed Employer that she intended to quit.  Board's F.F. 10.  VP overruled Claimant's suspension and convinced her to continue her employment.  Board's F.F. 11.  VP counseled Supervisor for yelling at Claimant, and also counseled Claimant for taking time off without first obtaining Supervisor's permission.  Board's F.F. 12.  Sometime thereafter, Claimant and a co-worker complained to VP regarding Supervisor's treatment of women, alleging that he yelled and cursed at them.  Board's F.F. 13.

Employer had a Summer Institute for new students, some of whom were minors and none of whom were of legal drinking age.  Board's F.F. 14.  Claimant and other admissions staff assisted at the Summer Institute by attending dinner on a boat with the new students and chaperoning their stay in a dormitory.  Board's F.F. 14.  On July 6, 2016, Claimant invited a guest without obtaining Supervisor's prior approval, and she and her guest each had one alcoholic drink on

the dinner cruise. Board's F.F. 15 & 26. It was not uncommon for employees to have a drink at such events. Board's F.F. 16. Claimant and her guest chaperoned the Summer Institute students over the next two days while they stayed in the student dormitory. Board's F.F. 17. On July 8, 2016, Supervisor informed VP that Claimant brought a guest and that she and the guest had alcoholic drinks on the boat. Board's F.F. 18. Later that day, Employer hosted a dinner at the school for prospective students and their families, during which Supervisor thanked all Summer Institute staff by name. Board's F.F. 19. Supervisor did not mention Claimant's name until reminded to do so, which caused Claimant to become upset and leave. Board's F.F. 20 & 21. As she left, Claimant walked by VP and told him that Supervisor's behavior was ridiculous and that she could not put up with it anymore. Board's F.F. 22.

The next day, July 9, 2016, Claimant applied for leave pursuant to the Family and Medical Leave Act (FMLA)[2] due to stress. Board's F.F. 23. That same day, Claimant informed the head of HR that she could no longer work with Supervisor. Board's F.F. 24. Employer granted Claimant FMLA leave through September 19, 2016. Board's F.F. 25. On August 31, 2016, Claimant e-mailed VP, stating that she wanted to speak with him before returning to work and that she did not want to continue working under Supervisor, alleging that Supervisor created a hostile work environment. Board's F.F. 27. VP responded that he was investigating possible violations of company policies as well as state and federal laws that may have occurred at the Summer Institute, and that upon Claimant's return, she would be subject to questioning regarding her alcohol consumption on the cruise and whether she had obtained necessary clearances for her guest. Board's F.F. 28. VP

---

[2] 29 U.S.C. §§ 2601-2654.

also informed Claimant that he disagreed with her assessment regarding the allegedly hostile work environment.  Board's F.F. 29.

By letter dated September 16, 2016, Claimant resigned her position due to Employer's allegedly hostile work environment.  Board's F.F. 30.   Claimant submitted a request for unemployment compensation benefits, which the Pennsylvania Department of Labor and Industry (Department) denied pursuant to Section 402(b) of the Law.  C.R. Item No. 6, Department's Notice of Determination.  Claimant appealed and, after holding multiple hearings, the Referee reversed the Department's determination.   C.R. Item 19, Referee's Decision/Order at 3.  Employer appealed, and the Board remanded the case to the Referee to allow for receipt of additional testimony from the parties.  C.R. Item 24, Notice of Board Hearing – Remand.   Following a hearing, the Board reversed the Referee's decision and determined that Claimant is ineligible for benefits under Section 402(b) of the Law.  C.R. Item 27, Board's Decision/Order at 5.  Claimant then petitioned this Court for review.[3]

On appeal, Claimant argues that "[t]he [Board] was in error when it found that [she] did not have necessitous and compelling cause for leaving her position."  Claimant's Brief at 15.  Claimant asserts that she "quit her position as a direct result of a hostile work environment," alleging that she "was subjected to repeated and persistent harassment during employment[,] including offensive and unwelcomed [sic] comments, distasteful conduct, and negligence."  Claimant's Brief at 7, 16.  Claimant contends "[she] endured an extremely permissive environment

---

[3] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are support by substantial evidence in the record."  *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 1991); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

that was encouraging of vulgar humor and questionable communication." Claimant's Brief at 16. Further, Claimant maintains that her "professional file did not make any note of her personal verbal or written participation in crude or vulgar humor, nor did it note any crude, silly, or flirtatious behavior with the president or other administrators in the work environment or outside of it." Claimant's Brief at 17. Claimant also contends that her "professional file does not contain documentation of unprofessional or inappropriate physical actions or commentary through verbal warnings or formal, written disciplinary actions." *Id.* Finally, Claimant asserts that "[t]he accusations made against . . . [her] are false and slanderous, and are a result of heresay [sic] brought forth by the [E]mployer. [Claimant's] record does not contain documented evidence suggesting that she engaged in the behaviors noted by the [E]mployer." *Id.*

Thus, Claimant challenges the Board's Findings of Fact Numbers 3, 4, and 5, which provide as follows:

> [3] Throughout her employment, the [C]laimant was an active and enthusiastic participant in all sorts of crude and vulgar electronic and verbal communications, as well as crude, silly and flirtatious behavior with the president and other administrators at work, and outside work at social events.

> [4] The [C]laimant never raised any objections to this type of behavior by anyone.

> [5] The [C]laimant herself made many crude, sexually-charged comments to the president and other administrators, told sexually graphic stories, made frequent racist comments about Employer's African-American admissions applicants, and engaged in sexually-

5

suggestive behavior like rubbing her groin area against the
president while sitting on his lap.

Board's F.F. 3-5.

"The Board's findings of fact are conclusive on appeal . . . so long as the record taken as a whole contains substantial evidence to support them." *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013) (citing *Penflex, Inc. v. Bryson,* 485 A.2d 359, 365 (Pa. 1984)). "Substantial evidence is correctly defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1387 (Pa. 1985) (quoting *Murphy v. Dep't of Pub. Welfare*, 480 A.2d 382, 386 (Pa. Cmwlth. 1984)). "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Henderson*, 77 A.3d at 718.

Taken as a whole, the record in this case contains substantial evidence to support the challenged Findings of Fact. The record contains a copy of a series of e-mail communications between Claimant and Employer's president, in which Claimant actively participated in and even encouraged vulgar and indecent conversation. C.R. Item No. 4, Employer Separation Information. The e-mails contained pictures that were highly suggestive, several involving nudity. *Id.* Although Claimant did not attach these pictures to the e-mails, she made no objection to them and she encouraged inappropriate commentary pertaining to the pictures. *Id.* The record also contains copies of photo booth pictures of Claimant with Employer's president, one of which shows the two kissing. C.R. Item No. 4,

Employer Separation Information; C.R. Item No. 17, 11/29/16 T.T. at 2. Further, the Board credited the testimony of Employer's president,[4] which revealed that Claimant was "inappropriate" with him "numerous times." 11/29/16 T.T. at 29; C.R. Item No. 27, Board's Decision/Order at 4. Employer's president provided the following examples:

- Claimant twice asked him if she could move in with him, once doing so in front of an admissions candidate. 11/29/16 T.T. at 29-30.
- Claimant asked him if he could arrange a date for her with a woman who was a vice president of the University of Pennsylvania. *Id.*
- Claimant told him he was the only man she would ever sleep with. *Id.*
- Claimant asked him numerous times why he ever got married. *Id.*
- Claimant twice asked him why he ever bred. *Id.*
- At a Christmas party, Claimant rubbed her vagina against him for at least five seconds. *Id.*
- On two occasions, Claimant asked him to pretend he was her husband for her mother. *Id.*
- Claimant used suggestive language regarding how he could help her to pay her bills. *Id.*
- Claimant described the mother of an applicant as a "hot mess," but said that she "would do her." *Id.*
- Claimant denigrated African-American admissions candidates by asking, "What are the marketing people doing? There are too many of these" while rubbing her fingers against the skin on her cheeks. *Id.*
- Claimant commented that there were "a lot of black people here." *Id.*
- Claimant told salacious stories about lesbian sex between novices at a convent. *Id.*
- Claimant described in graphic detail the sexual abuse her mother had experienced. *Id.*

---

[4] The Board is the ultimate factfinding body and arbiter of credibility in unemployment compensation cases. *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1227 (Pa. Cmwlth. 2017). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review." *Id.* The Board may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. *Id.*

It is reasonable to accept the evidence summarized above as adequate to support the conclusion that Claimant actively and enthusiastically participated in the crude, vulgar, and otherwise inappropriate humor, communications and behavior of which she complains on appeal. *See Peak*, 501 A.2d at 1387. Further, a review of the record indicates that Claimant did not object in any way to Employer regarding this type of behavior. Thus, substantial record evidence supports the Board's Findings of Fact Numbers 3, 4, and 5.

Claimant further contends that Employer engaged in "retaliation" against her, alleging that while away on FMLA leave, "[E]mployer took the opportunity to create an investigation [regarding her conduct at the Summer Institute] in order to penalize [her] for wrongdoing." Claimant's Brief at 7, 18. Thus, Claimant also challenges Finding of Fact Number 33, in which the Board found that "[t]he [E]mployer's investigation is not in retaliation for any complaints or for the [C]laimant taking leave." Board's F.F. 33. The Board determined that "[E]mployer was acting in good faith, without retaliatory animus, when it indicated that it was conducting an investigation regarding [the] events" in question. C.R. Item No. 27, Board's Decision/Order at 4. The Board further found that "[E]mployer was informed by the [C]laimant's [S]upervisor that he had not given the [C]laimant permission to bring a guest." *Id.*; *see also* Board's F.F. 26. Claimant contends that she "informed her [S]upervisor that her guest was a long-time [school] teacher . . . and that she had all necessary background clearances," to which Supervisor allegedly responded, "[d]o whatever you want." Claimant's Brief at 9-10. However, Employer's VP testified that whether Claimant's guest had the requisite background clearances "wasn't the problem. The problem was that the Claimant brought a

8

guest." C.R. Item No. 17, 11/29/16 T.T. at 77. Employer's VP further testified that he and Supervisor told Claimant not to drink alcohol on the dinner cruise. *Id.* at 73. Thus, substantial record evidence supports the Board's Finding of Fact Number 33.

Having established that the challenged Findings of the Board are supported by substantial evidence, we now turn to the Board's decision to deny Claimant unemployment compensation benefits.[5] "A claimant who voluntarily terminates his employment has the burden of proving that a necessitous and compelling cause existed." *Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012); *see also* 43 P.S. § 802(b). Employees who claim to have left their employ for a necessitous and compelling reason must prove:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment.

*Brunswick Hotel & Conference Center, LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "Whether a claimant had cause of a

---

[5] Claimant argues that, as she "was not present in the [May 30, 2017 remand] hearing appealing her unemployment [compensation] benefits, the Board did not consider her previous testimony given during the initial hearing." Claimant's Brief at 16. In its Order for a Remand Hearing, the Board did inform Claimant that "[i]f . . . [she] fail[ed] to make herself available for cross-examination at the [r]emand hearing either by telephone or in person, the Board [would] not consider her testimony from the hearing held on November 4, 2016." C.R. Item No. 22, Board's 5/10/17 Order of Remand Hearing at 1. Prior to the remand hearing, Claimant submitted a letter from her treating psychologist recommending that Claimant not attend, either in-person or by telephone. C.R. Item No. 25, 5/30/17 Hearing, Exhibit No. 17. "[T]he Board, therefore, "[found] that the [C]laimant had good cause for not attending the [r]emand hearing. Accordingly, the Board considered the entire record[,] including the [C]laimant's testimony." C.R. Item No. 27, Board's Decision/Order at 4. Thus, Claimant's argument is without merit.

9

necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." *Warwick v. Unemployment Comp. Bd. of Review*, 700 A.2d 594, 596 (Pa. Cmwlth. 1997).

Claimant maintains that she was "forced to resign from her position due to repeated and pervasive harassment, discrimination, and retaliation by . . . [E]mployer, . . . thereby resulting in a hostile work environment and constructive termination." Claimant's Brief at 7.

"In hostile work environment cases, Pennsylvania courts for half a century have found that profanity in the workplace, abusive conduct and unjust accusations represent adequate justification to terminate one's employment . . . ." *Porco v. Unemployment Comp. Bd. of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003) (citing *Elec. Reactance Corp. v. Unemployment Comp. Bd. of Review*, 82 A.2d 277, 277-78 (Pa. Super. 1951)). However, as discussed previously, the Board found that "[C]laimant was an active and enthusiastic participant" in the complained-of work environment. Board's F.F. 3. Thus, the work conditions of which Claimant complains could not have constituted real and substantial pressure for Claimant to terminate employment. *Cf. Pa. Liquor Control Bd. v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1526 C.D. 2011, filed Sept. 14, 2012), slip op. at 11 (holding that the claimant did not commit willful misconduct where the "[c]laimant's conduct did not create a hostile work environment" when the other employees "were not offended by [the] [c]laimant's behavior and, in fact, *freely participated in sexually explicit conversations*") (emphasis added).[6]

Claimant contends that, "[g]iven the climate and culture of the institution, [she] had no other choice but to submit to the circumstances presented to

---

[6] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414.

her in order to maintain her employment status," but that she "did raise objections to the president and other administrators when conflicts involving her immediate [S]upervisor . . . affected the wellbeing of students and staff, as well as her own." Claimant's Brief at 16-17. Claimant thus admits that she did not complain to Employer regarding the nature of her work environment. Therefore, even if Claimant could establish that her apparent condonation of Employer's work culture was insincere conformity for the sole purpose of maintaining employment, Claimant would still be ineligible for unemployment compensation benefits because she did not make a reasonable effort to preserve her employment by voicing her concerns with Employer. *See Brunswick Hotel*, 906 A.2d at 660.

Apart from Employer's general office culture, Claimant argues that Supervisor created a hostile work environment, thereby constituting necessitous and compelling cause to voluntarily leave her employment. Claimant's Brief at 13. Claimant asserts that "[Supervisor] behaved in a bullying manner," that his "behavior and communication within the work environment [was] unprofessional," and that he subjected her to "repeated verbal harassment." Claimant's Brief at 9, 17. By way of example, Claimant alleges that "[Supervisor] angrily reprimanded [her] when she took time off without obtaining his expressed [sic] permission and he unilaterally decided to suspend her for two days." Claimant's Brief at 8.[7] Claimant also alleges that when she became upset and left the room after Supervisor failed to mention her name at a Summer Institute family dinner, he followed her into another room, laughed, and said, "[d]on't be stupid." Claimant's Brief at 11.

---

[7] As previously noted, VP overruled Claimant's suspension and "counseled [Supervisor] for yelling at the [C]laimant." Board's F.F. 11 & 12. However, VP also "counseled the [C]laimant for taking days off without obtaining the required permission of her [S]upervisor." Board's F.F. 12.

It is well-settled that absent an intolerable work atmosphere, personality conflicts do not amount to necessitous and compelling cause for leaving one's employment. *Lynn v. Unemployment Comp. Bd. of Review*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981). Likewise, "normal workplace strains" are insufficient to justify a voluntary resignation. *Ann Kearney Astolfi DMD P.C. v. Unemployment Comp. Bd. of Review*, 995 A.2d 1286, 1289 (Pa. Cmwlth. 2010).

Here, the Board determined that "[C]laimant and her [S]upervisor had a conflict," and that "[C]laimant did not like [Supervisor's] management style." Board's F.F. 7. Although Claimant generally alleges that Supervisor verbally harassed her, Claimant's description of Supervisor's conduct falls far short of the level of abuse required to demonstrate intolerable working conditions for purposes of Section 402(b) of the Law. *See First Fed. Sav. Bank v. Unemployment Comp. Bd. of Review*, 957 A.2d 811, 817 (Pa. Cmwlth. 2008) (finding "real and substantial pressure for [c]laimant to terminate her employment" when she was "unjustly reprimanded with abusive language," "could not respond to discipline and was subject to criticism and ridicule from a senior vice president that was uncalled for and incorrect") (internal quotation marks and citation omitted).

Significantly, Claimant did not first complain to Employer until Supervisor admonished her for taking leave without his permission.[8] As this Court

---

[8] Claimant argues that after Supervisor attempted to suspend her, she complained to Employer regarding "[Supervisor's] unprofessional behaviors [sic] . . . on multiple occasions," but "no further disciplinary action was taken with [him]. [Supervisor] continued as a direct supervisor and both [Claimant] and [a co-worker] continued to note incidents of verbal harassment and unprofessional behavior directed at them by [Supervisor]." Claimant's Brief at 9. However, the Board found that "it would not have been futile for the [C]laimant to return to work after the expiration of her [FMLA] leave and specifically inform the [E]mployer of all that allegedly occurred" with Supervisor at the Summer Institute family dinner. C.R. Item No. 27, Board's Decision/Order at 5. Thus, even if Claimant could establish that Supervisor created an intolerable and hostile work environment, her claim for unemployment compensation benefits nevertheless would fail because she did not make a reasonable effort to preserve her employment.

has held, "[m]ere dissatisfaction with working conditions or resentment of supervisory criticism or a mere personality conflict . . . does not constitute necessitous and compelling reason[] for a voluntary quit." *Gioia v. Unemployment Comp. Bd. of Review*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995) (citing *Magazzeni v. Unemployment Comp. Bd. of Review*, 462 A.2d 961, 962 (Pa. Cmwlth. 1983)); *see also First Fed.*, 957 A.2d at 817 (requiring a claimant to "demonstrate[] more than a mere belief of unjust accusation" in order to demonstrate "a necessitous and compelling reason for terminating . . . employment"). Thus, the Board did not err in concluding that Claimant failed to meet her burden of proving that necessitous and compelling cause prompted her to leave her employment.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen A. Manley,               :
           Petitioner          :
                       :
          v.                :
                       :
Unemployment Compensation     :
Board of Review,            :    No. 1893 C.D. 2017
           Respondent     :

## O R D E R

AND NOW, this 5th day of October, 2018, the order of the Unemployment Compensation Board of Review dated November 22, 2017 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge