# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Minton,                          :
                Petitioner          :
                                         :
    v.                                   :  No. 145 C.D. 2018
                                         :  ARGUED:  October 15, 2018
Unemployment Compensation                :
Board of Review,                         :
               Respondent          :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED:  November 27, 2018

Stephen Minton (Claimant) petitions for review of the January 4, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits.  The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from work for willful misconduct.  We affirm the Board's Order.

## **Background**

Claimant worked as a full-time patrolman for the Borough of Wilkinsburg (Employer or Borough) from March 7, 2014 through March 21, 2017.  Finding of Fact (F.F.) No. 1.  On June 8, 2015, due to Claimant's misconduct, Claimant, Employer,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).  Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."  43 P.S. § 802(e).

and Claimant's Union signed a Last Chance Agreement, which was in effect for two years from that date. *Id.* No. 21.[2]

In 2016, due to complaints from Borough residents about patrol cars idling for long periods, Employer conducted an investigation of its police officers' daily

---

[2] The Last Chance Agreement provided in relevant part:

**WHEREAS**, [Claimant] had been made aware of significant concerns about his conduct, which occurred on or about March 16, 2015, and violated Borough policy; and

**WHEREAS**, in the absence of this Agreement the Borough would terminate [Claimant] for his conduct occurring on or about March 16, 2015; . . .

. . .

**NOW, THEREFORE, IN CONSIDERATION** of the mutual agreements set forth below, the Union, [Claimant] and the Borough agree to the terms of this **"LAST CHANCE AGREEMENT"** under the following express conditions:

1. [Claimant] shall serve a five (5) work day unpaid disciplinary suspension. . . .

2. [Claimant] will be required to participate in a program and/or class on incident report composition upon his return to work.

3. [Claimant] is expected to adhere to all of the Borough's policies and procedure[s], including but not limited to those specific to conduct unbecoming an officer and/or immorality. Any future misconduct or violation of Borough policies, procedures or work rules will constitute a violation of this Last Chance Agreement and will result in [Claimant's] immediate termination.

. . .

8. The parties agree that this Agreement will be binding for two years from the date of [the parties'] signatures. . . .

Last Chance Agmt., 6/8/15, at 1-2 (emphasis in original). According to Claimant, his misconduct in March 2015 related to "report writing." Notes of Testimony (N.T.), 6/15/17, Serv. Ctr. Ex. 3.

activities. *Id.* No. 2. Employer investigated the activities of **every** officer for the months of April, May, and June 2016. *Id.* Nos. 3-4. Based on those results, Employer decided to conduct further investigation into the officers' activities beyond June 2016. *Id.* No. 4.

Each Borough police officer was required to complete a daily activity report, logging his or her activities and the times he or she performed them, as well as codes for what types of calls were involved. *Id.* No. 5. Employer tracked each of its patrol vehicles via a global positioning system (GPS). *Id.* No. 6.

Based on the GPS results, Employer determined that, on several occasions, Claimant's daily activity reports did not reflect his actual activities and that Claimant's reports were falsified. *Id.* No. 7.

Claimant completed a daily activity report for June 17, 2016. *Id.* No. 8. In that report, Claimant indicated that he was in Sector 2 of the Borough from 7:00 p.m. to 7:40 p.m. and at the Ferguson Playground from 7:45 p.m. to 8:00 p.m. *Id.* No. 9. However, the GPS showed that Claimant was at 380 Brushton Avenue for 55 minutes during that one-hour period. *Id.* No. 10. 380 Brushton Avenue is an industrial area with an appliance store and a plumbing store, near the Martin Luther King Busway. *Id.* No. 11. This section of Brushton Avenue is not in Sector 2. *Id.* No. 12. Claimant testified that he was at the Ferguson Playground checking on a juvenile complaint. *Id.* No. 13. However, Claimant's actual location, as determined by the GPS, was not near the Ferguson Playground, but one-half mile to three-quarters of a mile from the Ferguson Playground. *Id.*

On May 6, 2016, Claimant completed an activity report indicating that he was on roving patrol. *Id.* No. 14. The GPS tracked Claimant at 924 Brinton Road in Braddock Hills. *Id.* No. 15. Braddock Hills is not in the Borough. *Id.* No. 16. Claimant did not have any business reason to be in Braddock Hills for two hours. *Id.* No. 17.

Claimant's activity report for September 2, 2016 indicated that Claimant was in Sector 1 of the Borough doing routine patrols. *Id.* No. 18. According to the GPS, Claimant stopped for one hour and one minute at 290 DRV Drive, an industrial area near the Martin Luther King Busway. *Id.* No. 19. There were other instances in which the GPS showed that Claimant was not at the location listed on his daily activity report or was not engaged in the activity identified on his report. *Id.* No. 20.[3]

Because Claimant had falsified reports and spent substantial idle time during the workday, and pursuant to the terms of the Last Chance Agreement, Employer discharged Claimant. *Id.* No. 22. Prior to Claimant's discharge, Employer sent Claimant a 10-day suspension notice, pending its discharge recommendation to the Borough's Labor Council. N.T., 6/15/17, Serv. Ctr. Ex. 5. In its March 22, 2017 suspension letter to Claimant, Employer stated:

> During our [March 21, 2017] meeting, you did not appear to understand the Borough's concerns or the perception created when officers appear to be inactive or idle. In addition, you did not seem to understand why the completion of your police activity log in a manner that was inconsistent with your actual conduct was concerning. It should be noted that you were previously placed on a Last Chance Agreement for conduct involving dishonesty. Despite this significant disciplinary consequence, your conduct appears to have not changed. You continue to engage in conduct that is dishonest.

*Id.* On April 5, 2017, the Labor Council voted to terminate Claimant's employment. *Id.*, Serv. Ctr. Ex. 9.

Claimant filed a claim for UC benefits, which the local Service Center denied. The Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law because he was discharged for willful misconduct. Notice of Determination, 5/24/17, at 1.

---

[3] The Referee did not specify when these other instances of misconduct occurred.

Claimant timely appealed to the Referee, who held a hearing on June 15, 2017. Claimant appeared with his brother as his non-legal representative and presented the testimony of two Borough police officers. Employer appeared with a tax consultant representative and also presented the testimony of Lieutenant Michelle Krempasky.

Following the hearing, the Referee affirmed the Service Center's decision and concluded:

> [C]laimant stated that there was no rule of which he was informed of which he had violated. However, falsification of records and spending idle time rather than working clearly falls below the standard of behavior [that] an employer has the right to expect of its employees. [C]laimant stated that it was legitimate, at times, for a patrolman to sit in his car and observe activities of passersby, in order to deter illegal activities. However, this does not explain why [C]laimant's activities listed on his daily activity reports were inconsistent with his location[s], or why, on one occasion, he was outside the [B]orough for a significant time.
>
> [E]mployer has met its burden of proving that [C]laimant was discharged for willful misconduct.

Ref.'s Order at 3. Therefore, the Referee determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Claimant timely appealed to the Board, where he argued, **for the first time**, that his discharge was too remote in time from his alleged infractions to support a willful misconduct determination. According to Claimant, the last infraction documented by Employer occurred on September 2, 2016, and Claimant was not discharged until more than six months later, on March 22, 2017.

In its decision, the Board did not address Claimant's remoteness claim. Rather, the Board adopted the Referee's Findings of Fact and Conclusions of Law and affirmed the Referee's decision. Bd.'s Op. at 1. Claimant now petitions this Court for review.[4]

### Issue

Claimant raises one issue in his Petition for Review: whether the Board erred in refusing to apply the law regarding the dismissal of an employee for willful misconduct when the alleged willful misconduct is too remote in time from the date of the dismissal. Pet. for Review, 2/2/18, ¶ 5.[5]

### Parties' Arguments

Claimant asserts that his discharge was too remote in time from his alleged infractions to have been the real reason he was discharged. Claimant admits that he did not raise this issue in his appeal to the Referee or at the Referee's hearing. However, Claimant argues that this Court should not find waiver because he was without counsel at the Referee's hearing and raised the issue at the earliest opportunity – in his appeal to the Board.[6]

The Board counters that Claimant waived his remoteness claim by failing to raise it before the Referee. The Board further asserts that, even if Claimant had not waived the issue, the record establishes that Employer had a valid reason for its delay. The Board argues that following its investigation, Employer discharged Claimant

---

[4] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] Because Claimant does not specifically challenge any of the Board's Findings of Fact, they are binding on appeal. *See Salamak v. Unemployment Comp. Bd. of Review*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985).

[6] Claimant does not explain why his appeal to the Board was his earliest opportunity to raise the remoteness issue.

immediately after completing the requisite pre-termination hearing process for police officers.

**Analysis**

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). "[A] knowing falsehood or misrepresentation to the employer concerning the employee's work constitutes a willful disregard of the employer's interest and a departure from the standards of behavior an employer can rightfully expect of an employee." *Melomed v. Unemployment Comp. Bd. of Review*, 972 A.2d 593, 595 (Pa. Cmwlth. 2009). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct disqualifying him from UC benefits. *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574 (Pa. Cmwlth. 2011).

However, when "there is an unexplained substantial delay between the claimant's misconduct and the employer's act to terminate the claimant, the remoteness doctrine will preclude an employer from seeking a denial of benefits based on allegations of willful misconduct." *Raimondi v. Unemployment Comp. Bd. of Review*, 863 A.2d 1242, 1247 (Pa. Cmwlth. 2004); *see Tundel v. Unemployment Comp. Bd. of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979) ("An incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits.").

Here, it is undisputed that Claimant did not raise the remoteness issue in his appeal to the Referee, nor did he address it at the hearing. Rather, Claimant asserted

only that he was unaware of any Borough rule that he violated and that he believed the real reasons for his termination were retaliation and "selective harassment." Pet. for Appeal, 5/31/17, at 1; N.T., 6/15/17, at 25. Generally, a "claimant waives review of an issue by neglecting to raise and preserve it before the referee." *Watkins v. Unemployment Comp. Bd. of Review*, 751 A.2d 1224, 1226 (Pa. Cmwlth. 2000); *see Dehus v. Unemployment Comp. Bd. of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988) (concluding that the claimant waived his due process claim before the Board because he failed to raise that theory in the proceedings before the Referee).

In his brief, Claimant offers two reasons why this Court should not find waiver. First, Claimant argues that because he was not represented by counsel at the hearing, the Referee should have inquired into the remoteness issue on Claimant's behalf. Second, Claimant asserts that he raised the issue at the earliest opportunity by raising it in his appeal to the Board. We disagree with both contentions.

When a *pro se* claimant appears before a referee, "the referee 'must act *reasonably* in assisting in the development of necessary facts.'" *Hackler v. Unemployment Comp. Bd. of Review*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011) (citation omitted) (emphasis added). However, the referee is not obligated to advise a *pro se* claimant on legal theories or to become the claimant's advocate. *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002).

Here, the Referee informed Claimant of his rights to be represented by counsel, to present evidence, to cross-examine witnesses, and to present testimony on his own behalf. N.T., 6/15/17, at 2. Claimant stated that he understood his rights as explained by the Referee. *Id.* Moreover, Claimant had a non-legal representative at the hearing to assist him in the presentation of his case. At the hearing, Claimant maintained that he was unaware of any Borough rule that he violated and that he did not commit willful misconduct, and he presented the testimony of two witnesses to support his claims.

Claimant never asserted that Employer unreasonably delayed his discharge from employment. Contrary to Claimant's assertion on appeal, the Referee was not required to inquire into a legal theory that neither Claimant nor his representative advocated. *See Brennan v. Unemployment Comp. Bd. of Review*, 487 A.2d 73, 77 (Pa. Cmwlth. 1985) (recognizing that "[t]he referee need not advise an uncounseled claimant on specific evidentiary questions or points of law"). Furthermore, given the evidence of record showing the expansive nature of Employer's investigation, as well as Employer's administrative review process, it is not reasonable to expect the Referee to question, *sua sponte*, the timeliness of Claimant's discharge.

We also cannot excuse Claimant's failure to raise this issue until his appeal with the Board. Aside from an implication that Claimant's *pro se* status may have resulted in his failure to raise the remoteness issue before the Referee, there is no indication in the record that Claimant could not have raised the issue by the exercise of due diligence. *See* Pa. R.A.P. 1551(a)(3) (stating that an appellate court may not consider an issue not raised before the governmental agency unless "the court is satisfied that the petitioner could not by the exercise of due diligence have raised [the issue] before the [agency]"); *Finfinger v. Unemployment Comp. Bd. of Review*, 854 A.2d 636, 639 n.5 (Pa. Cmwlth. 2004) ("[A] layperson who chooses to represent himself in a legal proceeding must assume the risk that his lack of expertise and legal training may prove to be his undoing."). Therefore, because Claimant failed to raise the remoteness issue before the Referee, we conclude that it is waived.

Even if Claimant had not waived his remoteness claim, we would conclude that it lacks merit. Our Court has stated:

> [W]here the record establishes an explanation for the delay, *such as the lengthy nature of the employer's administrative review process*, and there is no action on the part of the employer indicating that it condoned the

9

claimant's conduct, the remoteness doctrine does not apply to preclude a denial of benefits.

*Raimondi*, 863 A.2d at 1247 (emphasis added). "[T]he need for administrative review is a valid reason for delay." *Id.*; *see also Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 721 (Pa. Cmwlth. 2013) (upholding a willful misconduct determination and rejecting the claimant's remoteness claim where the "[e]mployer delayed its discharge of [the c]laimant because it was conducting the necessary steps in its own administrative review process and investigating [the c]laimant's conduct").

Here, the record establishes that Employer conducted an investigation over the course of several months of not only Claimant, but **all** of its police officers. F.F. No. 2; N.T., 6/15/17, at 7. At the hearing, Lieutenant Krempasky presented both documentary and testimonial evidence regarding three specific instances of Claimant's misconduct, but she clarified that they were only "examples" of the information the Borough had collected during its investigation. N.T., 6/15/17, at 8. Lieutenant Krempasky testified that the examples presented were "[n]ot the totality of how many times [Claimant] falsified reports and sat idle." *Id.* Furthermore, when Claimant filed his initial claim for UC benefits, he stated that the "the incident . . . which caused [him] to be discharged or suspended[] occur[red]" on **December 31, 2016**. *Id.*, Serv. Ctr. Exs. 2, 2A. Thus, while Employer offered only three specific instances of Claimant's misconduct at the hearing, it appears, by Claimant's own admission, that Employer's investigation of Claimant continued through at least December 31, 2016.

After completing its investigation, Employer was required to submit the results to the Borough's Labor Council for review. *See* N.T., 6/15/17, at 7. In addition, as a public employee, Claimant was entitled to notice and a pre-termination hearing (known

as a *Loudermill*[7] hearing) to respond to the allegations against him.  Claimant's *Loudermill* hearing occurred on March 21, 2017.  *Id.* at 16.[8]  Employer suspended Claimant the next day, March 22, 2017, and discharged Claimant 10 days later pursuant to Borough policy.  *See id.*, Serv. Ctr. Exs. 5, 9.

We conclude that Employer demonstrated a reasonable explanation for its delay between Claimant's infractions and his termination from employment.  The record establishes that, giving Claimant the benefit of the doubt, the time between Claimant's last known infraction (December 31, 2016) and his termination date (March 22, 2017) was approximately 12 weeks.  Thereafter, as discussed above, Employer was required to take additional, necessary administrative steps to effectuate Claimant's termination from employment.  Claimant also offered no evidence to show that Employer condoned his conduct between the dates of his infractions and his discharge.

Therefore, we conclude that, even if the issue were not waived, the remoteness doctrine would not preclude a finding of willful misconduct in this case.  *See Henderson*, 77 A.3d at 721-22 (delay of three to four-and-one-half months from the incident dates to the claimant's discharge was sufficiently explained by the employer's

---

[7] "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)."  *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

[8] In its March 22, 2017 suspension letter to Claimant, Employer further explained the substance of its investigation as follows:

> You were provided the opportunity to present any information for the Borough to consider prior to disciplinary action being finalized.  Specifically, you noted that there were times that you may have made phone call[s] on your personal cell phone during these times[,] and you were provided with the opportunity to submit your cell phone records identifying the same.  You declined to do so.

N.T., 6/15/17, Serv. Ctr. Ex. 5.

11

administrative review process, which required review of documents, interviews, and an investigation of the allegations in the claimant's response letter); *Raimondi*, 863 A.2d at 1247 (delay of two-and-one-half months was sufficiently explained by the employer's investigation and administrative review process regarding the claimant's misconduct); *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 749 (Pa. Cmwlth. 2000) (finding that the claimant's termination was not too remote where the employer began its investigation immediately upon receiving notice of the claimant's misconduct and terminated the claimant seven months later, after the investigation concluded).[9]

## Conclusion

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[9] In his brief, Claimant also asserts that the Board failed to address the remoteness issue, even though Claimant raised it before the Board. Claimant's Br. at 2, 5. While it is true that the Board did not address the remoteness issue in its Order, the Board, as the Respondent herein, fully addresses it in its brief filed with this Court.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Minton,            :
          Petitioner        :
                                :
        v.                    :    No. 145 C.D. 2018
                                :
Unemployment Compensation    :
Board of Review,                :
           Respondent    :

## O R D E R

AND NOW, this 27th day of November, 2018, the Order of the Unemployment Compensation Board of Review, dated January 4, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Minton,                                 :
                       Petitioner               :
                                                :
             v.                                 :  No. 145 C.D. 2018
                                                :  Argued: October 15, 2018
Unemployment Compensation Board                 :
of Review,                                      :
                       Respondent               :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                       FILED: November 27, 2018

          The Unemployment Compensation Board of Review (Board) did not
address Stephen Minton's (Claimant) legal contention that his employer waited too
long to act upon his alleged misconduct.  The majority excuses this failure of the
Board by holding that Claimant waived the issue.  Because Claimant raised the
remoteness doctrine at the first opportunity, he did not waive the issue.  Respectfully,
I dissent.

          It is well established that an "incident of willful misconduct cannot be
… temporally remote from the ultimate dismissal and still be the basis for a denial
of benefits."  *See Tundel v. Unemployment Compensation Board of Review*, 404
A.2d 434, 436 (Pa. Cmwlth. 1979).  There is no specific time frame for application
of the remoteness doctrine.  In *Tundel*, 404 A.2d at 436, this Court held that 25 days
between the incident of misconduct and the employee's dismissal constituted an
unacceptable delay.  In *Unemployment Compensation Board of Review v. Dravage*,

353 A.2d 88, 89 n.2 (Pa. Cmwlth. 1976), this Court held that a discharge eight months after the alleged misconduct constituted an unacceptable delay.

Nevertheless, where the employer can explain the delay, the remoteness doctrine will not apply. In *Raimondi v. Unemployment Compensation Board of Review,* 863 A.3d 1242, 1247 (Pa. Cmwlth. 2004), we clarified that it is an "*unexplained* substantial delay between the claimant's misconduct and the employer's act to terminate the claimant" that triggers the remoteness doctrine. In *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 721-22 (Pa. Cmwlth. 2013), we held that the employer's investigation and required fact finding conference accounted for the delay in dismissing the claimant. In *Raimondi*, 863 A.2d at 1247, the employer's investigation and review procedures explained the 73-day delay between the claimant's alleged misconduct and discharge.

The majority affirms the Board's adjudication and, in doing so, holds that Claimant waived the issue of remoteness by not raising it at the first opportunity, *i.e.,* before the Referee. I disagree with this analysis.

It is well established that "[w]aiver occurs if a party fails to raise the issue prior to appearing before the Commonwealth Court." *Sharp Equipment Company v. Unemployment Compensation Board of Review*, 808 A.2d 1019, 1025 (Pa. Cmwlth. 2002). An issue is waived where it is not raised before the Referee *or* Board. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 611 (Pa. Cmwlth. 2011). Claimant raised the remoteness doctrine in his appeal to the Board,[1] which was his first opportunity to do so.

---

[1] The certified record does not contain any response by Borough of Wilkinsburg (Employer) to Claimant's Brief in Support of Appeal to the Board. Notably, Employer did not assert that Claimant waived the remoteness issue by not raising it before the Referee or that it would be prejudiced by the Board's consideration of this issue.

MHL-2

The Referee found that Claimant's daily activity reports for May 6, 2016; June 27, 2016, and September 2, 2016, were not accurate. Referee Decision at 2; Finding of Fact Nos. 8-10, 14-16, 18-19. Employer discharged Claimant on April 5, 2017. Claimant did not know which incidents of misconduct alleged by Employer would be credited by the Referee until the Referee made these findings. Without these findings, Claimant could not know that the remoteness doctrine applied. The Referee made no factual findings about the gap between Claimant's last incident of misconduct, *i.e.,* September 2, 2016, and his discharge on April 5, 2017. This delay of eight months is sufficient to trigger the remoteness doctrine. *Tundel,* 404 A.2d 434, *Dravage,* 353 A.3d 88.

Claimant could not have raised the issue of remoteness before the Referee. Evidence relevant to a delay in acting upon misconduct lies within the exclusive control of Employer, which has the burden of production and persuasion. In short, Claimant did not waive the remoteness doctrine.

The majority holds that, even if the remoteness issue is not waived, Claimant could not prevail because Employer's evidence was sufficient to explain the delay. The majority draws on Employer's testimony at the hearing on its procedures addressing employee misconduct. *See* Majority Opinion at 10-11. The majority also selects December 31, 2016, as the date of Claimant's last infraction, contrary to the Referee's factual findings. Simply, the majority engages in fact finding that should have been done by the Board and must take place before this Court can conduct meaningful appellate review.

I would vacate the order of the Board and remand the matter to the Board to consider Claimant's issue of remoteness.

_____
MARY HANNAH LEAVITT, President Judge

MHL-3